**STATE of Missouri, Respondent,**

v.

**David Crockett PEDICORD, Appellant.**

**No. 53191.**

Supreme Court of Missouri,
Division No. 1.

Feb. 10, 1969.

John C. Danforth, Atty. Gen., Christopher S. Bond, Asst. Atty. Gen., Jefferson City, for respondent.

Edward W. Speiser, Salisbury, for appellant.

HIGGINS, Commissioner.

Appeal from denial of Motion to Vacate Judgment and Sentence pursuant to Criminal Rule 27.26, V.A.M.R.

On April 16, 1952, appellant pleaded guilty to the crime of robbery with a dangerous and deadly weapon, charged under the Second Offense Act. Sections 560.135 and 556.280, V.A.M.S. He was sentenced to life imprisonment by Judge Green and is confined in the Missiouri State Penitentiary.

Appellant filed his motion April 5, 1967, and was accorded an evidentiary hearing June 13, 1967, at which he testified in his own behalf. He acknowledged that he had been charged by an information filed April 16, 1952, "under the Habitual Criminal Act, and particularly with robbery by use of a deadly weapon, * * * with robbing Paul Carter of Salisbury of an automobile." The record shows allegation that the crime occurred March 31, 1952; that he was arrested on the same date; and that he was taken before the Magistrate Court of Chariton County on April 1, 1952, at which time he was arraigned and, upon waiving preliminary hearing, was bound over to the May, 1952, term of circuit court for trial. "All he just told me is that I was charged with assault, * * * it was not read to me." He did not have an attorney in the magistrate court and he

did not request one although he "could probably have got the money * * *." He could not recall whether he was asked if he wanted a preliminary hearing. He had "heard of them having preliminary hearings" but he did not know their purpose. After these proceedings he was taken to jail. He heard nothing about bond. Sheriff Iman "said the Judge would probably be over here in a few days * * * and says, 'You can plead guilty.'"

On April 16, 1952, he was taken before the circuit court. "I come over and he give me my sentence and right after dinner I was, they took me to Jeff City. * * * It seemed like they said a few words to me and then they appointed a lawyer (Mr. A. L. Freiz, now deceased) and we went back in a room * * * and we sat in there, I'd say maybe not over five or ten minutes I don't think at the most * * * he had some papers there and he looked over them and he talked * * * he read them there. * * * He read the charge, what I was charged with. * * * I just understand that I was charged with armed robbery * * * taking a car." He did not remember whether anything was said about being charged under the "habitual criminal" act. The attorney did not make any suggestion nor recommend anything for appellant to do. "I was just, you know, I didn't want to put nobody to expense, my brother and them, * * * and I just thought I'd come and plead guilty because I was caught in that car down there at Glasgow, Missouri, and there wasn't no way out but I didn't think I would get off with that kind of time after, you know, coming up and pleading guilty because I hadn't harmed nobody * * *." His own consideration was that it would be best to plead guilty. He did not think he would receive a life sentence "because I just got through doing 25 for armed robbery." When he returned to the courtroom from conferring with his attorney, the prosecuting attorney read the two prior convictions charged, carnally knowing a female under sixteen years of age and concealing mortgaged property, and the present charge of robbery with a deadly weapon, after which he entered a plea of guilty. He was then 48 years old. "We got to talking about how long to stay down there, you know before you'd get out." He stated no one informed him of the range of punishment. Prior to the sentencing the prosecuting attorney also read appellant's record of conviction for "highway robbery" upon which he "had just got out 82 days before this."

Upon cross-examination appellant admitted he understood the charge that was read and that he was informed of the charge "of taking the car and having the knife, that's right. I admitted that." In respect to the sentence, he said the judge said that he had to go by the law.

"Q Did he tell you it was mandatory that he give you a life sentence where you were charged with this habitual criminal— A (Interrupting) Well, under the capital punishment its one of the two— Q (Interrupting) Were the words 'habitual criminal act' or 'habitual criminal' phraseology or terms or words like that ever used either by your attorney or by the Court or the prosecuting attorney or anyone else in the courtroom? A Well, it seemed to me like when I was sentenced that it was, said something, only it was read, sentenced me."

Appellant acknowledged that the court offered him further time in which to appear and that Mr. Freiz went over the facts of the case.

James J. Wheeler, Prosecuting Attorney of Chariton County in 1952, testified that although he did not recall specifically a preliminary hearing in appellant's case, during his four years as prosecuting attorney and his fourteen years' practice before the magistrate in question, it had always been the judge's practice to read the charge to the accused and ask if he wished a preliminary hearing. He also recalled that appellant wanted his case considered immediately in the circuit court. In his opinion, appellant's attorney, Mr. A. L.

Freiz, "was a competent practicing attorney and had been engaged in the practice of law for many years and had represented, and did criminal work to the defense of those charged with a crime down through the years. * * * well able * * * to represent a person charged with a commission of a crime."

Judge Green's docket entry in the robbery case, Exhibit 2, reflects: "Information filed. Defendant appears voluntarily, without counsel and after being advised of his right to have case called at next term of court, elects to proceed at this term and at this time. Defendant being without counsel and without means, A. L. Freiz, a member of this bar is appointed to represent defendant. Defendant confers with counsel and afforded opportunity to confer with others of his choice. Thereafter defendant returns into court with counsel and again elects to proceed at this time and at this term. Defendant formally arraigned. Defendant enters plea of guilty * * *."

Appellant contends: (1) that failure of a magistrate to fully inform him of the charge on which he was arraigned and of the nature and purpose of a preliminary hearing and to provide counsel for him at that arraignment constituted a denial or infringement of his constitutional rights.

■ Even if it be assumed that the proceedings in the magistrate court were fraught with the charged defects, this contention is without merit on this record because such defects, including lack of preliminary hearing, were waived by entry of the guilty plea. State v. Keeble, Mo., 399 S.W.2d 118, 120–121[8, 9]; State v. McMillian, Mo., 383 S.W.2d 721, 722[3]; State v. Maloney, Mo., 434 S.W.2d 487, 496 [12].

In attack on the plea of guilty, appellant contends: (2) that failure of the court-appointed attorney, the court, and the prosecuting attorney, preliminary to or at arraignment in the circuit court, to inform appellant of the nature and extent of the charge, including its relation to the "Habit-

ual Criminal Act," (3) that conferring with court-appointed attorney for five to ten minutes denied appellant sufficient time to consult and make the decision to plead and indicates inadequate representation by counsel, and (4) that failure of court-appointed attorney to inform of range of punishment on this plea of guilty under the "Habitual Criminal Act," all constituted a denial and infringement of his constitutional rights.

■ Points (2) and (4) relate to the voluntariness of appellant's guilty plea which was entered before the same judge who accorded this evidentiary hearing. The reconstruction by this record of the events of April 16, 1952, necessarily was accomplished without the availability of the testimony of Mr. Freiz, appellant's court-appointed lawyer, now deceased. Even so, it is evident from this record that appellant knew he was charged with robbery involving the taking of another's automobile by use of a knife. He did have counsel, opportunity to consult with him and others, and was accorded opportunity to continue the case if desired. He admitted to the previous felony convictions contained in the information, as well as a subsequent conviction of "highway robbery" for which he had received a sentence of 25 years and from which he had just been discharged 82 days prior to committing this robbery. He also recalled the discussion relating to the sentence he might receive. This was sufficient evidence upon which to find that appellant knew and understood the nature and extent of the charge and the range of punishment. State v. Good, Mo., 403 S.W.2d 594, 599[3–5].

■ These points also suggest that appellant's real complaint is that he received a more severe sentence than he anticipated. In this connection he does not contend that he was misled or in any other way overreached, and he admits that he robbed a man of his car by use of a knife. At best, his claim is that he did not anticipate that

he might be sentenced to life imprisonment, but that alone is not a sufficient ground for setting aside such a sentence after the lapse of fifteen years. State v. Harris, Mo., 382 S.W.2d 642, 645[3].

 The attack on the voluntariness of the plea urged by point (3) is on the specific ground of inadequate representation by counsel. Appellant did confer with counsel, he was offered further time and an opportunity to consult with others, yet made his own determination to plead guilty because he had taken the car in the manner charged. Counsel was shown to be competent and the court so found. Five or ten-minute consultation, if so, is a short time in which to determine such a course of action, but appellant's desire to proceed in the face of offers of additional time corroborates other evidence of his own wish to go before the court immediately. In these circumstances counsel's assistance was not shown to be inadequate.

Under Criminal Rule 27.26 the burden is on the movant to demonstrate, notwithstanding deficiency of record, that his guilty plea was not voluntarily entered or entered without understanding of the charges, and for that reason a manifest injustice would occur if he was not permitted to withdraw his plea or the judgment was not set aside. Mooney v. State, Mo., 433 S.W.2d 542, 544[4]. It cannot be so said on this record.

Finally, appellant complains that the sentence and judgment fails to show conviction under the "Habitual Criminal Act" as charged in the information. In State v. Hagedorn, Mo., 305 S.W.2d 700, a judgment and sentence of fifteen years' imprisonment for armed robbery was upheld even though the charge was under the Second Offense Act as it applied at the time of Pedicord's plea of guilty in this case which would have made a life sentence mandatory if the prior offense had been found. Similarly, the life sentence imposed on appellant was authorized by Section 560.135 and its imposition under this information furnishes no ground for relief in this proceeding.

Judgment affirmed.

HOUSER and WELBORN, CC., concur.

PER CURIAM:

The foregoing opinion by HIGGINS, C., is adopted as the opinion of the court.

All of the Judges concur.