**David Crockett PEDICORD, Petitioner,**

v.

**Harold R. SWENSON, Warden,
Respondent.**

**No. 1405.**

United States District Court
W. D. Missouri, C. D.

Oct. 6, 1969.

Maurice J. O'Sullivan, Jr., Kansas City, Mo., for petitioner.

John C. Danforth, Atty. Gen., Gene E. Voigts, First Asst. Atty. Gen., Jefferson City, Mo., for respondent.

## MEMORANDUM OPINION AND ORDER GRANTING HABEAS CORPUS

JOHN W. OLIVER, District Judge.

### I.

This habeas corpus case involves a state prisoner who is serving a mandatory life sentence in the Missouri penitentiary imposed in 1952 on a plea of guilty tendered after a five or ten minute consultation with appointed counsel. The Supreme Court of Missouri affirmed the trial court's denial of petitioner's Missouri Rule 27.26, V.A.M.R. postconviction motion in State v. Pedicord, Sup.Ct. of Mo., Div. 1, 1969, 437 S.W.2d 87. That court adversely decided on the merits the questions presented to this Court; hence, there is no question but that petitioner has exhausted his available State postconviction remedies.

As stated by the Supreme Court of Missouri, petitioner contended "(1) that failure of a magistrate to fully inform him of the charge on which he was, arraigned and of the nature and purpose of a preliminary hearing and to provide counsel for him at that arraignment constituted a denial or infringement of his constitutional rights;" and "(2) that failure of the court-appointed attorney, the court, and the prosecuting attorney, preliminary to or at arraignment in the circuit court, to inform appellant of the nature and extent of the charge, including its relation to the 'Habitual Criminal Act,' (3) that conferring with court-appointed attorney for five to ten minutes denied appellant sufficient time to consult and make the decision to plead and indicates inadequate representation by counsel, and (4) that failure of court-appointed attorney to inform of range of punishment on this plea of guilty under the 'Habitual Criminal Act,' all constituted a denial and infringement of his constitutional rights."

Those same contentions are made in this case. Petitioner will be granted appropriate habeas corpus relief for the reasons we now state.

### II.

The Supreme Court of Missouri decided petitioner's Missouri Rule 27.26 appeal without the benefit of appropriate trial court findings of fact and conclusions of law required by Missouri Rule 27.26(i).[1] See Crosswhite v. State, Mo. Sup.Ct., Div. 2, 1968, 426 S.W.2d 67, and State v. Stidham, Mo.Sup.Ct. en banc 1967, 415 S.W.2d 297.

 In accordance with principles enunciated in Townsend v. Sain, 372 U.S.

---

1. At the close of the Missouri Rule 27.26 hearing, the trial court stated that the only question of any real importance that he could see in this case was "whether or not a preliminary hearing was had, whether or not one should of been had [and] whether or not he [the petitioner] was entitled to counsel at that time" (Tr. 60). The trial judge, after stating, "I just don't believe the courts have ever gone that far," denied petitioner's postconviction motion.

We recognize that on July 12, 1967, subsequent to petitioner's notice of appeal to the Supreme Court of Missouri filed on June 20, 1967, the trial court filed "findings upon proceeding on petition under Rule 27.26" in which, among other things, it stated in formal language, that "the defendant * * * knew and understood the nature of the charge and the proceedings" and that "counsel represented defendant with ability and skill and presented all facts favorable to defendant." The Supreme Court of Missouri made no reference to those formal post-appeal findings, apparently recognizing that those findings had no support in the record. We defer to the Supreme Court of Missouri's refusal to accept the trial court's post-appeal findings for the same implicit reason the Supreme Court of Missouri refused to accept them.

293, 318, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963), discussed in White v. Swenson, W.D.Mo. en banc 1966, 261 F.Supp. 42, 58, and Noble v. Swenson, W.D.Mo.1968, 285 F.Supp. 385, 386–387, this Court will defer to and accept all findings of fact reliably found by the Supreme Court of Missouri in its opinion affirming the trial court's denial of petitioner's Missouri Rule 27.26 motion. It cannot, of course, defer to general conclusory statements unsupported by any substantial evidence. See Goodwin v. Swenson, W.D.Mo.1968, 287 F.Supp. 166 at 168.

On April 1, 1952 one Paul A. Carter signed an "affidavit or complaint in felony case" in which it was stated that:

> [U]pon the 31st day of March, 1952, one David Crockett Pedicord did then and there, with specific criminal intent, wilfully, unlawfully, and feloniously, upon one Paul E. Carter did make an assault with a dangerous and deadly weapon, to-wit, a long bladed knife, and one 1946 Dodge Sedan Automobile bearing Missouri license No. 410–055, of the reasonable value of Eight Hundred Dollars ($800.00), the property of the said Paul H. Carter, in the presence and against the will of the said Paul H. Carter, then and there being, by putting the said Paul H. Carter in fear of some immediate injury to his person, feloniously did rob, steal, take and carry away, contrary to the form of statute in such cases made and provided, and against the peace and dignity of the State of Missouri.

On the same day a "warrant in felony case" was issued by Magistrate R. H. Bentley in which the same language used in the "affidavit or complaint" was repeated. The Sheriff of Chariton County, Missouri, was commanded by that warrant to "forthwith apprehend the said David Crockett Pedicord * * * and bring him immediately before the Judge of this court to answer the charge made in said information, and for preliminary hearing, and thereupon to be dealt with in accordance with law."

The record in the Magistrate Court for April 1, 1952 confirms that no information had then been filed which the petitioner could have answered as commanded by the warrant. The Magistrate Court record further states that only an "affidavit or complaint in felony case" had been filed, that a "warrant" had been issued.

On April 16, 1952, an information under the Missouri Second Offense Act, a charge not mentioned in the Magistrate Court proceedings, was filed in the Circuit Court of Chariton County, Missouri. After a five or ten minute conference with court appointed counsel, petitioner entered a plea of guilty. The trial court accepted that plea and imposed sentence. We defer to the Supreme Court of Missouri's finding that a conviction under the Missouri Second Offense Act "as it applied at the time of Pedicord's plea of guilty * * * made a life sentence mandatory" (437 S.W.2d at 91).

It is undisputed that petitioner was not represented by counsel until the day the information was filed and the day on which he was sentenced. One A. L. Freiz, now deceased, was that day appointed to represent the petitioner. He conferred with the petitioner in the jury room in the courthouse "not over five or ten minutes * * * at the most." The Supreme Court of Missouri noted that the petitioner testified "that no one informed him of the range of punishment" before his plea of guilty was tendered" (437 S.W.2d at 89).

In spite of an apparent acceptance of that undisputed testimony, the Supreme Court of Missouri nevertheless stated that there "was sufficient evidence upon which to find that appellant knew and understood the nature and extent of the charge and the range of punishment" (437 S.W.2d at 90). Quite inconsistently, however, that court added:

> [A]ppellant's real complaint is that he received a more severe sentence than he anticipated. * * * At best, his claim is that he did not anticipate that he might be sentenced to life

imprisonment, but that alone is not a sufficient ground for setting aside such a sentence after the lapse of fifteen years. [437 S.W.2d at 90–91].

It would seem obvious that if petitioner in fact knew that the only sentence which the trial judge could lawfully impose on his plea of guilty was a mandatory life sentence, he could not possibly have "received a more severe sentence than he anticipated." Under that circumstance it would have been impossible for petitioner to have failed to "anticipate that he might be sentenced to life imprisonment." Had petitioner actually known the consequences of his guilty plea he could not have been surprised to receive the only sentence which the trial court could impose.

▇▇▇▇ This Court therefore may not defer to the Supreme Court of Missouri's conclusion that petitioner "knew and understood the nature and extent of the charge and the range of punishment" (437 S.W.2d at 90) because there is no evidence in this record to support such a finding. We do defer to that court's finding that petitioner testified that "no one informed him of the range of punishment." [2]

### III.

All courts, including this one, are required to apply federal standards to petitioner's claim of ineffective assistance of counsel and to his claim that his plea of guilty was not voluntarily tendered. We find and determine that petitioner is entitled to habeas relief in regard to both those claims.

We have found that petitioner was not in fact advised of the consequences of his plea of guilty. We conclude that a plea tendered without such knowledge cannot be said to be voluntary. It was over forty years ago that Mr. Justice Butler stated for a unanimous court in Kercheval v. United States, 274 U.S. 220, 223, 47 S.Ct. 582, 583, 71 L.Ed. 1009 (1927) that:

A plea of guilty differs in purpose and effect from a mere admission or an extrajudicial confession; it is itself a conviction. Like a verdict of a jury it is conclusive. More is not required; the court has nothing to do but give judgment and sentence. Out of just consideration for persons accused of crime, courts are careful that a plea of guilty shall not be accepted unless made voluntarily *after proper advice and with full understanding of the consequences.*

In Com. of Pa. ex rel. Herman v. Claudy, 350 U.S. 116, 76 S.Ct. 223, 100 L.Ed. 126 (1956), the Supreme Court unanimously reversed the Supreme Court of Pennsylvania's dismissal of a habeas corpus proceeding which sought to present the question of whether the petitioner's plea of guilty, accepted eight years earlier, had been involuntary and because he had not been advised of his right to counsel. Without dissent, the Supreme Court of the United States rejected Pennsylvania's contention that, under the Due Process Clause of the Fourteenth Amendment, the "petitioner had no constitutional right to be informed by the court or prosecuting attorney * * * of the severity of the sentences which

---

2. The opinion of the Supreme Court of Missouri concedes that petitioner's appointed counsel did not advise petitioner of the mandatory life sentence consequence of his guilty plea. 437 S.W.2d at 89. Petitioner so testified. See Tr. 46.

In regard to the prosecuting attorney, petitioner testified that "he called me in his office there and told me what I was charged with but he didn't tell me what I was going to get or nothing like that * * *" (Tr. 40). The prosecuting

attorney did not put that testimony in issue when he testified.

In regard to the trial judge, petitioner testified that the trial judge did not inform him what term or punishment he might receive until "I finished and then they explained it to me" (Tr. 47). The trial judge did not testify. In his examination of the petitioner (Tr. 49–50), the trial judge did not put petitioner's testimony in issue.

might be imposed against him" (350 U.S. at 120, 76 S.Ct. at 225).

In *Machibroda v. United States*, 368 U.S. 487, 82 S.Ct. 510, 7 L.Ed.2d 473 (1962), the Supreme Court reversed the Sixth Circuit which had affirmed the District Court's denial of a Section 2255 motion in which the movant alleged a violation of Federal Criminal Rule 11. The principle from *Kercheval* quoted above was quoted by Mr. Justice Stewart in support of the determination that:

> There can be no doubt that, if the allegations contained in the petitioner's motion and affidavit are true, he is entitled to have his sentence vacated. A guilty plea, if induced by promises or threats which deprive it of the character of a voluntary act, is void. A conviction based upon such a plea is open to collateral attack. See *Walker v. Johnston*, 312 U.S. 275, 61 S.Ct. 574, 85 L.Ed. 830; *Waley v. Johnston*, 316 U.S. 101, 62 S.Ct. 964, 86 L.Ed. 1302; *Shelton v. United States*, 356 U.S. 26, 78 S.Ct. 563, 2 L.Ed.2d 579, reversing, 5 Cir., 246 F.2d 571. [368 U.S. at 493, 82 S.Ct. at 513]

At the time *Machibroda* was decided Federal Criminal Rule 11 was identical to Missouri Rule 25.04. Both rules then provided that the trial court "shall not accept the plea [of guilty] without first determining that the plea is made voluntarily with understanding of the nature of the charge." Federal Criminal Rule 11 was amended in 1966 by the addition of the language "and the consequences of the plea."

It is clear, however, that both the federal and State procedural rules relating to pleas of guilty, both prior and subsequent to 1966 amendment of the federal rule, were substantially a "restatement of existing law." See Advisory Committee and Historical Notes to Federal Criminal Rule 11, paragraph 1. See also the 1966 Notes which state that "the third change in the second sentence adds the words 'and the consequences of his plea' to state what clearly is the law." [U.S.C.A., Title 18, Rule 11, Notes, p. 558]. *Von Moltke v. Gillies*, 332 U.S. 708, 68 S.Ct. 316, 92 L.Ed. 309 (1948), cited in support of the foregoing statement and decided prior to the 1966 amendment to the federal rule noted that an attorney appointed to give token representation to a defendant "did not inform the petitioner as to the nature of the charge against her * * * and did not inquire if she knew the punishment that could be imposed for her alleged offense" (332 U.S. at 713, 68 S.Ct. at 318).[3] That case held, consistent with the familiar principles articulated in *Johnson v. Zerbst*, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461, 146 A.L.R. 357 (1938), that a defendant could not legally waive his right to counsel unless he knows the range of punishment for the offense with which he is charged. Mr. Justice Black stated "To be valid such waiver must be made with an apprehension of the nature of the charges, the statutory offenses included within them, *the range of allowable punishments thereunder*, possible defenses to the charges and circumstances in mitigation thereof, and all other facts essential to a broad understanding of the whole matter." [Emphasis ours]. [Ibid at 724, 68 S.Ct. at 323.]

Application of appropriate federal standards require us to conclude that there is no evidence to support a finding

---

3. See also 332 U.S. at 717–718, 68 S.Ct. at 320, where it was stated "[I]f any explanation of the implications of the indictment or of the consequences of her plea was then mentioned by the judge, or by anyone in his presence, the record does not show it. Nor is there anything to indicate she was informed that a sentence of death could be imposed under the charges." In that case, as in this, the trial court made a so-called "finding" that the defendant "thoroughly understood the nature of the charge contained in the indictment." It is one thing to say that one understands the nature of a charge; it is quite another to understand the range of sentence that might be imposed on a plea of guilty to that charge.

that petitioner's plea of guilty was voluntary and that therefore petitioner is entitled to relief on his voluntariness of plea claim.*

## IV.

We have noted that petitioner's appointed counsel did not in fact advise him that the only sentence that the trial judge could impose was a life sentence and that petitioner was, as the Supreme Court of Missouri noted, in fact surprised when the mandatory life sentence was imposed by the trial judge.

The Supreme Court of Missouri ruled the effective assistance of counsel question presented in this case by simply stating that "counsel was shown to be competent and the court so found." In Goodwin v. Swenson, W.D.Mo.1968, 287 F. Supp. 166, 182, we stated over a year ago that:

> The recitation of the Supreme Court of Missouri in *In re Goodwin* that petitioner's trial counsel "is an able lawyer who had had previous experience in the trial of criminal cases, including the defense of persons charged with murder" (359 S.W.2d at 601) is totally beside any relevant point; the question in a Sixth Amendment case is whether one who may well be an admittedly able lawyer did or did not render effective assistance in the defense of an accused under all the facts and circumstances of the particular case. [287 F.Supp. at 182].

■ The controlling cases are cited and discussed in *Goodwin* and need not be reiterated here. In light of the finding that petitioner's counsel did not in fact inform him that the only sentence he could receive on his plea of guilty was a life sentence, it follows that petitioner's Sixth Amendment right to the effective

assistance of counsel was violated. Petitioner's "desire to proceed in the face of offers of additional time" (437 S.W.2d at 91) may not properly be considered as evidence that he was given adequate assistance of counsel in his five or ten minute consultation with Mr. Freiz. One would be required to assume that the petitioner had been told that he was going to be given a mandatory life sentence and that he was anxious to return to the Missouri penitentiary from which he had been but recently released.

Such an assumption can not be made in light of petitioner's undisputed testimony that "I didn't think I was going to get all that stretch" (Tr. 23); that "I didn't think I would get * * * that kind of time after * * * pleading guilty because I hadn't harmed no body" (Tr. 30); that "I didn't think I would get that * * * heavy a sentence" (Tr. 31); that his attorney never told him he "would receive a life sentence" (Tr. 31); and that " * * * after the sentence * * * I told * * * the Judge * * * that I didn't think I would get that long a sentence" (Tr. 33).

In this case, as in *Goodwin*, we are required to find from all the facts and circumstances that petitioner was, on the facts, denied the effective assistance of counsel.

## V.

We noted in *Goodwin* that it was unnecessary to reach the question of whether the burden of proof rule applicable to effective assistance of counsel cases of the Third, Fourth, and Fifth Circuits should be applied to that case. See 287 F.Supp. at 184 where we cite and discuss United States ex rel. Mathis v. Rundle, 3rd Cir. 1968, 394 F.2d 748; Coles v. Peyton, 4th Cir. 1968, 389 F.2d 224; and

---

* We are familiar with Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969), decided subsequent to the Supreme Court of Missouri's affirmance of the state trial court's denial of postconviction relief. While the principles stated in that case are not new, see and compare cases cited in McCarthy v. United States,

394 U.S. 459, 89 S.Ct. 1166, 22 L.Ed.2d 418 (1969), and State v. Blaylock, Sup. Ct. of Mo., Div. 1, 1965, 394 S.W.2d 364 (cited with approval in *Boykin*), we expressly do not apply *Boykin* in order to avoid injecting any possible question of retroactivity in this case.

Mosley v. Dutton, 5th Cir. 1966, 367 F.2d 913.[4]

The recent case of United States ex rel. Chambers v. Maroney, 3rd Cir. 1969, 408 F.2d 1186, points out that the rule that "the belated appointment of counsel is inherently prejudicial and makes out a prima facie case of denial of effective assistance of counsel, with the burden of proving absence of prejudice shifted to the prosecuting authorities" does not mean the taint of prejudice can not be overcome by an appropriate showing. That court made clear that:

[T]he prima facie ineffectiveness or the inherent prejudice due to late appointment of counsel may properly be overcome *either* by evidence produced by the state in an evidentiary hearing showing that there was no prejudice *or* by adequate affirmative proof *otherwise* appearing in the record demonstrating that the appellant was not prejudiced. We believe this is a logical approach which is fair to a petitioner seeking relief and at the same time comports with sound judicial administration. [Emphasis the Court's]. (408 F.2d at 1190).

Sound judicial administration requires the application of rules which are designed to avoid the waste of judicial time in unnecessary and available postconviction proceedings. A rule which shifts the burden of going forward with the evidence in ineffective assistance of counsel cases in which last minute appointments were made is calculated to cause an abandonment of such procedures and the adoption of appropriate procedures which will reduce the occasion for postconviction attacks upon convictions based either on guilty pleas or jury verdicts.[5] While some of the cases describe the rule in absolute burden of proof language, the rule that is recognized and applied in this District accepts that language in its secondary sense, namely, that the burden of going forward with the evidence shifts and that the prosecution's failure to establish that a particular defendant's constitutional rights were not in fact violated would require the grant of habeas relief. See Wigmore on Evidence (3rd. Ed.) §§ 2485–2489.

Martin v. Commonwealth of Virginia, 4th Cir. 1966, 365 F.2d 549, shows that Virginia recognized three years ago that its former practice of "indicting and trying on the same day" placed defense counsel in a position under which he could render only *pro forma* representation. See also Fields v. Peyton, 4th Cir. 1967, 375 F.2d 624, 627–628, in-

---

4. The recent decisions of United States ex rel. Williams v. Brierley, E.D.Pa.1968, 291 F.Supp. 912, and United States ex rel. Kimbrough v. Rundle, E.D.Pa.1968, 293 F.Supp. 839, apply the cited rule. In the latter case Judge Masterson appropriately stated:

The significant premise underlying those decisions which have held that late appointment of counsel is inherently prejudicial to a defendant's rights to a fair trial, is that last-minute appointment of counsel is functionally equivalent to the absence of counsel. Once such last-minute appointment has been shown it is presumed, unless there is proof to the contrary, that the defendant was prejudiced. See, e. g., Martin v. Commonwealth of Virginia, 365 F.2d 549 (C.A.4, 1966). Indeed, one of the principal vices arising from last-minute appointment of counsel is that counsel's lack of familiarity with the details of his client's case makes

it impossible for him to exercise an enlightened judgment as to the threshold question of how his client should plead. [Ibid. at 843]. See also Bentley v. State of Florida, 285 F.Supp. 494, S.D. Fla., 1968.

5. See Commonwealth ex rel. West v. Rundle, 428 Pa. 102, 105–106, 237 A.2d 196, 197–198 (1968), in which the Supreme Court of Pennsylvania recently stated:

A majority of criminal convictions are obtained after a plea of guilty. If these convictions are to be insulated from attack, the trial court is best advised to conduct an on the record examination of the defendant which should include, inter alia, an attempt to satisfy itself that the defendant understands the nature of the charges, his right to a jury trial, the acts sufficient to constitute the offenses for which he is charged and the permissible range of sentences.

volving a guilty plea tendered after a fifteen or thirty minute conference between the defendant and appointed counsel, where the abandonment of the former Virginia practice was noted.[6]

We noted in *Goodwin* that when the Third Circuit adopted the Fourth Circuit's burden of proof rule in ineffective assistance of counsel cases in United States ex rel. Mathis v. Rundle, *supra*, it stated that "the hopeful practical consequence of our rule * * * will be that the states and their judicial systems in the Third Circuit will become more careful in permitting appointed counsel to fulfill in a realistic manner the function which they should have been responsibly assuring all along."

Experience teaches that convictions based on pleas of guilty tendered immediately or shortly after hasty courthouse conferences between the defendant and his recently appointed counsel are a fertile source of postconviction proceedings. Judge Butzner, the trial judge in Martin v. Commonwealth of Virginia, appropriately stated that "the State can show no compelling reason for indicating a felon, appointing counsel and trying him all on the same day."

The practice of forcing or permitting counsel, except under exceptional circumstances, to enter anything other than a plea of not guilty on the day of his appointment is almost an invitation to the defendant to later question the effectiveness of the representation afforded by counsel who, under ordinary circumstances, would obviously lack time to investigate either the facts or the law in a particular case.

In the event the not unlikely postconviction motion is filed, uncompensated time of still other lawyers will be required in the state trial and appellate courts and, still later, for the trial and appellate courts in the federal system. Adoption of a rule that will tend to avoid this unnecessary waste of lawyers' and judges' time, which will also tend to produce the quality of legal representation commanded by the Constitution is consistent with the proper administration of criminal justice.

Accordingly, we base our ruling on the ineffective assistance of counsel on an alternate ground. We find and conclude that the facts and circumstances in this case, at the least, established a prima facie case of denial of effective assistance of counsel, and that the respondent did not carry the burden of going forward with the evidence which shifted to him as a matter of law. The respondent adduced no evidence which can be said to support a finding that petitioner was not in fact deprived of rights guaranteed him by the Constitution of the United States.

For the second reason stated, we find and conclude that petitioner is entitled to habeas relief in regard to his claim of ineffective assistance of counsel.

We express our appreciation and commend Maurice J. O'Sullivan, Jr., Esquire, a member of the Bar of this Court, who has represented petitioner in this Court without compensation. His services have

---

**6.** In reversing a denial of habeas, the Court stated:

> Doubtless in the past there have been numerous instances of the designation of counsel on the day of the trial and and even in the last hour before trial. The procedure, however, is no longer considered satisfactory for it invites lax performance of professional duty and endangers defendants' constitutional right to the effective assistance of counsel. * * * As the concept of the Sixth Amendment right has broadened to encompass the provision of counsel for indigents, so too the *standards* to which appointing courts and appointed counsel must adhere have become more exacting. Courts are required to allow counsel sufficient time to inform themselves fully, to reflect maturely and to prepare thoroughly in the cases to which they are assigned, and courts can no longer tolerate perfunctory performance by appointed lawyers of the duty owed to indigent defendants. [375 F.2d at 628]. (Emphasis the court's).

been in the highest tradition of the Bar.

Consistent with the established practice of this Court, see White v. Swenson, W.D.Mo.1966 en banc, 261 F.Supp. 42, 60, for an example, this Memorandum Opinion and Order was circulated among all the active judges of this Court for their views and suggestions concerning the principles of law stated and particularly the principles stated in part V in which the rule relating to the burden of going forward with the evidence is recognized and applied for the first time in this District. We are grateful for suggestions of our Brethren which have been incorporated in our enunciation of the legal standards and principles stated.

Chief Judge Becker and Judges Collinson and Hunter have authorized me to state their concurrence with the standards and principles of law stated. The responsibility for the findings of fact and conclusions of law, of course, is the sole responsibility of the judge of this Division.

For the reasons stated, it is

Ordered that petitioner is entitled to the relief prayed for but that the writ shall not issue for a period of thirty (30) days in order to afford the State of Missouri, through its Attorney General, the opportunity to have petitioner's conviction set aside or declared to be invalid, to have counsel appointed, and to begin new trial proceedings; it is further

Ordered that if no such new trial proceedings are begun within thirty (30) days from the date of this order, the writ shall issue; it is further

Ordered that if such trial proceedings are begun within thirty (30) days from the date of this order, this Court will delay the issuance of the writ until such time as the situation calls for further disposition of this case; it is further

Ordered that the Attorney General keep this Court advised of all proceedings that may be taken consistent with our stay of the issuance of the writ.