**James William HARRIS, Movant-Appellant,**

**v.**

**STATE of Missouri, Respondent.**

**No. 54443.**

Supreme Court of Missouri,
Division No. 2.

Nov. 10, 1969.

O. J. Taylor, Springfield, for appellant.

John C. Danforth, Atty. Gen., Gene E. Voigts, First Asst. Atty. Gen., Jefferson City, for respondent.

BARRETT, Commissioner.

On March 13, 1952, James William Harris entered a plea of guilty to the charge of armed robbery of a Safeway Store in Springfield and was sentenced to 35 years' imprisonment. Sixteen years later, in August 1968, Harris instituted this 27.26 proceeding, not to vacate the sentence and judgment but as he personally requested in this hearing and as he and his counsel request in his brief here that his sentence be modified or corrected from 35 to 20 years' imprisonment. Upon the trial of this proceeding he was represented by Mr. William A. Moon, a very competent lawyer, widely experienced in criminal cases, and upon this appeal by Mr. O. J. Taylor likewise a respected lawyer and a former Assistant United States District Attorney. In support of his plea to reduce the sentence Harris alleges, one, that when he entered the plea of guilty in 1952 he was denied the effective assistance of counsel and, two, that the court's finding that no promises, a promise of a 20-year sentence, were made to appellant is erroneous.

The background of appellant's plea of guilty and the 35 years' sentence as testified to by him upon this hearing and as recited by his counsel on the trial of this proceeding is this: He is now 60 years old and has spent 43 years of the last 49 years in prisons. In 1919, then age 10, he was sentenced to 10 years' confinement in an Ohio reformatory for car theft. He served sixteen months of that sentence and was paroled. In 1925 he was sentenced to 10 years' imprisonment in Missouri for bank robbery. He served five years and ten months of that sentence. In 1931, after being out of prison but two months, he was again sentenced to 10 years' imprisonment for bank robbery and served five years, ten months of that sentence. Again after being out of prison but a few weeks he was sentenced by the United States District Court in Kansas City to 45 years' imprisonment for the armed robbery of a national bank. That sentence was reduced to 20 years' imprisonment and he served the sentence on Alcatraz until June 29, 1951, when he was given a conditional release under supervision for six and one-half years. While on parole, on February 27, 1952, Harris, Dean Upton and Joe Andrews, Harris with a .38 caliber revolver, held up and robbed the employees of a Safeway Store in Springfield of $400.00. When Springfield police pursued their getaway car Harris fired several shots at the police. Incidentally, his federal parole has been revoked and a "federal detainer" is outstanding. Upton entered a plea of guilty and was sentenced to 35 years' impris-

onment. Joe Andrews was sentenced to 3 years' imprisonment and in the meantime robbed the Farley State Bank and has been sentenced to life imprisonment. State v. Andrews, Mo., 371 S.W.2d 324.

In addition to his plea of guilty in 1952 Harris, upon the hearing of this proceeding, admitted his participation in the robbery of the Safeway Store and he does not so much as suggest a defense or a single mitigating circumstance. In so much of the record as was preserved when he pleaded guilty his then counsel, Mr. Gerald Lowther, made a plea for leniency, pleading that he be given "something to look forward to, as he serves this sentence." Mr. Lowther said, "As he has pleaded, he has committed a crime, and he has to pay his debt to society. But the only thing I have to add is that while he is in jail, give this man something to look forward to. He was just married in December, has a very attractive young wife, and apparently was on the road to rehabilitation, having had a job as a perfume salesman in Kansas City, and apparently doing very well."

The court, Judge Warren White for over 30 years a noted trial judge, in response to Mr. Lowther's plea said, "In answer to your question, I will say that I am taking into consideration everything that has been said here. And probably two of the most salient facts that have been mentioned are, first, that he does have six and one-half years to serve on the Federal sentence, provided, if Federal authorities see fit to revoke his parole and imprison him after he has finished the sentence which I will impose here, and that is one fact. And another fact, which I think is very important to consider, is the fact that this man, Harris, is the one who was shooting at the officers who were attempting to do their duty and enforce the law. And it would appear that, which Mr. (Milton) Kirby (prosecuting attorney) has said, that none of the others in the car did any shooting at the police officers. And the fact that he didn't kill any of them may be due to a perfect (sic) aim, the jolting and motion of the car, which was evidently traveling at considerable speed, and may have been because he didn't really want to kill anybody anyway but just wanted to scare them. However it is just things like that that do cause policemen and sheriffs and marshals, and so on, to get killed, and the instances in which they do get killed are entirely too frequent." Whereupon the court imposed the sentence of 35 years' imprisonment.

While in this 27.26 proceeding the appellant makes two claims, they are in fact interwoven. This is especially true in view of the specific relief sought, namely a reduction of the sentence to twenty years' imprisonment. While relying on cases in which there were actual trials (Powell v. Alabama, 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158, Michel v. Louisiana, 350 U.S. 91, 76 S.Ct. 158, 100 L.Ed. 83), not pleas of guilty, the appellant claims that he was denied the effective assistance of counsel. This contention of necessity hinges on the validity of the claim that the court's finding that "no promises were made to appellant is clearly erroneous." It is the claim of Harris and he so testified that Glenn Hendrix (who died December 9, 1967) then, sheriff of Greene County, promised or guaranteed a sentence of twenty years' imprisonment if he would plead guilty. It is in this connection alone apparently that he now claims that his court-appointed counsel, Mr. Lowther, was ineffective—that is in not securing the twenty years' sentence. It should be further noted in passing that Judge White died January 1, 1964, and that magistrate Judge Tom Coppage, before whom the preliminary hearing was had, died on March 28, 1961.

Judge Keet, the successor circuit judge in Greene County, made a full and complete finding of fact and law and found all issues against the appellant's claims. Particularly as to any assurance Sheriff Hendrix may have given "The court finds as a fact that this conversation did not occur" and subsequently the court detailed its

reasons for so finding. But as to effectiveness of counsel, these are the circumstances in which the problem arose: According to the transcript from magistrate court Mr. Kirby, the prosecuting attorney, filed his affidavit on February 29, 1952, and on March 5, 1952, the defendant after having seen and read the complaint waived preliminary hearing. A transcript of the magistrate court proceedings was filed in the circuit court on March 5, 1952, and on March 6, 1952, the prosecuting attorney filed his information formally charging Harris with the armed robbery of the Safeway Store on February 27, 1952. The circuit judge's docket as well as the clerk's minutes show that on March 6, 1952, Mr. Gerald Lowther, admitted to the bar on September 1, 1951, was appointed to represent the defendant. Both Harris and Mr. Lowther testified that they first conferred for at least one-half hour and on that occasion Harris stated that "I was going to stand trial." And that was Mr. Lowther's understanding of the defendant's desires and purpose. In the meanwhile he conferred with the defendant's wife two or three times. Mr. Lowther and Harris did not confer again until March 13, 1952, after someone in the prosecuting attorney's office called and told Mr. Lowther that Harris was going to enter a plea of guilty. Mr. Lowther immediately went to the courthouse but talked to Harris, then handcuffed to a deputy sheriff, very briefly two or three minutes because Harris informed him that he was going to plead guilty. Harris did not then tell Mr. Lowther that he had talked to the sheriff, he did not mention any agreement or understanding and there was no discussion of a penalty of either 20 years or 35 years. Mr. Lowther made a statement to the court but Harris did not ask for additional time to confer with his counsel or anyone else and they did not confer with anyone after the imposition of sentence. Mr. Lowther did not hear from Harris for sixteen years although he sent one or more Christmas cards to Mr. Kirby.

Mr. Lowther was concerned and surprised at Harris' change of attitude from his determination to stand trial to entering a plea of guilty and so he requested that a court reporter be called and in open court in the presence of his client and before his plea of guilty, on March 13, 1952, he said, "and being under an obligation to do the best that I legally can for my client, I feel compelled to make this statement into the record to clear my own conscience and to clear up any misunderstandings that might arise in the future." After stating that he had conferred with his client on the two mentioned occasions he said, "I am not advising Mr. Harris not to plead guilty, and, on the other hand I am not advising him to plead guilty. It is my opinion that a crime as serious as this requires solemn deliberation. And I do not know what conversation has taken place between the Sheriff and the Prosecuting Attorney and the Defendant, if any, —and I might say that I am not aware that any conversation has taken place,—but I am aware of the fact that *this defendant decided to plead guilty without further consultation with his attorney.*" Mr. Kirby interposed at this juncture to say that *"if for any reason they would like to have additional time, certainly would be no objection from the State as to any additional time being given to them."* Mr. Lowther replied, "Your Honor, I want to do what Mr. Harris wants to do. But the only thing I am worried about, I want him to be sure what he wants to do. Now, if the sentence is passed on Mr. Harris, *and he later decided that he was talked into it, or it was spur of the moment action,* I don't want to be blamed for this. I have to live with my conscience, and I am under an obligation to do the best I can for him, and just want to be sure *that he is sure— that he is sure what he is doing.* That is my own reason for my statements into the record." It should again be noted that Mr. Lowther made this statement into the record, in open court and in the presence of Mr. Harris on March 13, 1952. Following this statement Mr. Lowther said, "I would like to say another word, if you are going to pass sentence on him." And

he then made his plea for leniency and the court responded as previously indicated.

Upon the hearing of this 27.26 motion Harris testified that after his conference on March 8 with his lawyer he had a talk with Sheriff Hendrix in his office. The gist of it was this, "Well, he made me understand (as he already knew) that Upton had got thirty-five years and that of course if I went to trial with the case and was convicted I would get thirty-five or even more and that he could guarantee that I wouldn't get more than twenty years if I'd plead guilty. Q. Now, was he positive in his statement to you? A. He seemed to be fairly positive, yes. Q. What did you tell him? A. Well, I considered it for a few minutes and then figured that well, if that's the best I can do I will take the twenty and I told him to go ahead, he seemed to have the assurance (sic) that he was acting for somebody."

On this latter hearing and in explanation of his plea of guilty without consulting Mr. Lowther he said on direct examination that when Mr. Lowther conferred with him in the courtroom he "wanted to verify it from me" that I desired to enter a plea of guilty. He said that he did not tell Mr. Lowther why he had changed his mind and he did not tell him of his conversation with Sheriff Hendrix. When asked why he had not conferred with his attorney before entering his plea he said, "Well, I can't answer that question, I don't know, it was just that the offer was so good that I didn't want to turn it down." Harris was familiar with the maximum penalty for robbery. When asked what the court said he answered, "Oh, he verified the fact that I wanted to plead guilty and he was ready to take the plea." On cross-examination he remembered Mr. Kirby's offer for additional time. When pressed as to why he did not ask for time in which to tell Mr. Lowther of the twenty years' promise he said, "Well, I don't know why, it was just that I wanted to take the twenty years and have it over with and he had been informed that I was pleading

guilty and he was present." He recollected Mr. Lowther's plea for leniency and could think of nothing to add to his statement of it, and he knew that Upton had been sentenced to thirty-five years. Even after receiving the thirty-five years' sentence Harris admits that he said nothing to his lawyer or to the court or for that matter for sixteen years to anyone. And finally as to why he did not speak to his lawyer after the court's thirty-five years' sentence he said, "Well, I felt that *it was needless because he had nothing to do with it whatsoever,* he had no knowledge of the interviews—or interview, rather, that I had with Sheriff Hendrix."

Mr. Lowther in testifying at this proceeding said that Harris never mentioned his conversation with Sheriff Hendrix, that he never mentioned a twenty years' sentence or any sentence and that he made no effort to talk to him after imposition of sentence. Mr. Kirby, the prosecuting attorney, talked to the defendant but he had no knowledge of even the mention of a twenty-year sentence. But most important when asked if he had talked to the judge he said, "No, sir. We all—the policy of Judge White had been well established that he did not take kindly to anybody—to any recommendations from the prosecuting attorney."

While conceding that no allegations had been made "with respect to the manner in which Mr. Lowther, as appointed counsel for appellant, discharged his professional obligations. We do not see that he could have done more under the circumstances," his counsel nevertheless contends that the "plea of guilty was accepted by the court in such a manner and under such circumstances as to deny to the appellant the effective assistance to which he was entitled." The mere recitation of the appellant's point all but completely refutes his basic claim of ineffective assistance of counsel. While it is said that he was improperly denied counsel on his preliminary hearing it is not pointed out, since he pleaded guilty, just what at that stage

counsel could have done and he points to no circumstance in any manner prejudicial to him or to his cause as a result of his being without counsel in the magistrate court. State v. Peck, Mo., 429 S.W. 2d 247; State v. Turley, Mo., 416 S.W.2d 75. And so in this proceeding since he, experienced as he was in robbery prosecutions, saw fit to handle his own cause and deal, as he claims sixteen years after the fact, with a sheriff rather than with the prosecuting attorney or his own counsel. In short, not only has the state in refutation of the appellant's uncorroborated, unlikely claims supported any possible burden of proof that may have been upon it (Pedicord v. Swenson, 304 F.Supp. 393), the appellant's own testimony in this proceeding supports the court's finding that he was not denied the effective assistance of counsel. Crosswhite v. State, Mo., 426 S.W.2d 67; Drew v. State, Mo., 436 S.W. 2d 727; State v. Wilkinson, Mo., 423 S.W. 2d 693; Allen v. Rodriguez, 372 F.2d 116, and Anaya v. Rodriguez, 372 F.2d 683.

In his finding that "this conversation (with Sheriff Hendrix) just did not occur" the court referred to at least seven factors causing him to not believe the appellant's claim of a guarantee of twenty years' imprisonment. These were that he was well aware of the fact that Upton had already received a sentence of thirty-five years and since he was no less culpable, having fired several shots at the police, had no reason whatever to expect less punishment. The court also pointed to his extensive record of prior robbery convictions, his admitted knowledge of his own guilt all of which bore upon his credibility as a witness (3 Wigmore, Evidence, §§ 980, 986) if not directly upon the question of whether there was or had been a promise of a lesser sentence. The court noted the fact of his waiting sixteen years and after the death of Sheriff Hendrix before letting a single soul in on his claim that he had been promised but twenty years' imprisonment. And in connection with all these factors and persuasive with Judge

Keet was the well-known policy of Judge White against such recommendations. And supportive of Judge Keet's finding is Judge White's solemn and serious pronouncement made to the appellant and his counsel in 1952. And so as it was with effectiveness of counsel the court's finding of no promises is fully justified and supported upon this record. State v. Zavalcofski, Mo., 349 S.W.2d 942; State v. Mountjoy, Mo., 420 S.W.2d 316; State v. Hamel, Mo., 420 S.W. 2d 264; State v. Lillibridge, Mo., 399 S.W. 2d 25; Drew v. State, supra.

Accordingly the judgment is affirmed.

STOCKARD and PRITCHARD, CC., concur.

PER CURIAM.

The foregoing opinion by BARRETT, C., is adopted as the opinion of the court.

All of the Judges concur.