Virgil Lewis **TURLEY**, Movant-Appellant,

v.

**STATE of Missouri**, Respondent.

No. 53922.

Supreme Court of Missouri, Division No. 2.

March 10, 1969.

Motion for Rehearing or to Transfer to Court En Banc Denied April 14, 1969.

John C. Danforth, Atty. Gen., Gene E. Voigts, Asst. Atty. Gen., Jefferson City, for respondent.

BARRETT, Commissioner.

On June 10, 1965, after a complaint in magistrate court and a requested preliminary hearing, an information was filed charging Virgil Lewis Turley with burglary and larceny. Specifically the charge was that on May 29, 1965, he had burglarized the Scottish Rite Temple in Joplin and had stolen an adding machine, a radio, and a slide projector, all of the total value of $367.50. It developed that he had been picked up by the Joplin police on a description furnished by the Kansas City Police Department where he was wanted on an escape and kidnapping charge. At the time of his arrest on May 30, 1965, he had the key to a stolen automobile parked across the street and the next day he "opened the car and identified all the items and told the officers where they came from." In addition he had two prior felony convictions in Texas, one in California and one in the federal courts. On June 14, 1965, after the appointment of counsel, Turley entered a plea of guilty and the court sentenced him to four years' imprisonment for the burglary and three years' imprisonment for stealing, "said sentences to run consecutively and not concurrently."

In his second 27.26 proceeding (State v. Turley, Mo., 416 S.W.2d 75) he has, in accordance with the amended rule, filed a motion to withdraw his plea of guilty (Cr. Rule 27.25, V.A.M.R.) and at the same time to set aside the judgment and sentence of seven years' imprisonment. There was a full hearing upon the motion, the appellant Turley testified at length, the prior prosecuting attorney and his counsel when his plea was entered both testified, there was the record on his prior motion and most important there was the transcript of the record of his plea of guilty on June 14, 1965. At the conclusion of this hearing the court made a full and complete finding of fact, all issues were found against the appellant,

and his motions to withdraw his plea of guilty and to set aside the sentence and judgment were denied. It should be added that throughout the proceedings, upon his amended 27.26 motion and hearing as well as in this court, he has been represented by very diligent, competent court-appointed counsel.

Here he has briefed and orally argued three points attacking the sentence and judgment of June 14, 1965; that he was denied effective representation of counsel, that the court did not discharge its duty before accepting his plea and that his "plea of guilty was entered involuntarily." All these points are interrelated and the state treats them as one point contending that Turley's plea of guilty was voluntarily and knowingly entered and that therefore the judgment should be affirmed.

The circumstances were that Turley was arrested on May 30, 1965, he was given a preliminary hearing on June 9, 1965, and was "bound over to the Jasper County Circuit Court for trial." His bond was fixed at $7500.00 and "(i)n default of bond" he was remanded to the custody of the sheriff and was confined in the Jasper County jail at Carthage. In these circumstances, as the court found, his preliminary was held "two days after the June term of Circuit Court at Carthage had commenced and therefore he was bound over to the September term of Court." On this hearing in response to a question by the court Turley reluctantly conceded that the reason he was brought from Carthage to Joplin and entered his plea on June 14th was to avoid a "lay over there in jail until the September Term." He insisted on answering "And, because of these other reasons I have stated, yes, sir." The other reasons, he testified, were that the charges in Kansas City would be dropped and that upon a plea of guilty he would receive a sentence of four years—not seven. But the then prosecuting attorney testified that immediately following the preliminary "he asked me what the disposition of his case would be and wanted to know—wanted to enter a plea of

guilty; that was ultimately what he would do and what recommendation I would make if he would enter a plea of guilty." The prosecutor said, "I told him I would recommend seven years," and he said, again as the court found, that he did not tell him he would have to serve only four years. The prosecutor said that Turley did ask what disposition would be made of the charges in Kansas City, the prosecutor told him that he did not know but would find out. Accordingly he called the prosecutor's staff in Kansas City and they agreed that if Turley entered a plea of guilty to the charges in Joplin the charges in Kansas City would be dismissed. And, the charges in Kansas City were dismissed. On direct examination in this hearing there was this question and answer: "Q. Would you relate to the court why you entered a plea of guilty to the charge of burglary and stealing on that date (June 14, 1965)? A. Because of an understanding between the Prosecutor at that time, Mr. Baldridge, I believe—understanding as to a recommendation for charges in Kansas City to be dropped, that was outstanding at that time and—."

In this background when Turley was transferred from Carthage to Joplin and appeared in circuit court on June 14th to enter a plea of guilty Judge Watson refused to accept the plea until Turley had an opportunity to consult a lawyer. And, as the lawyer, Mr. Burress, said, he was called "and presented myself to Judge Watson who advised me that I was representing an indigent prisoner who was Mr. Turley." Turley now complains that he received the services of a lawyer—"I believe I'd be stretching it a little to say fifteen minutes before the guilty plea was entered." He says that Mr. Burress only inquired into his background, did not discuss the evidence and told him that he couldn't get a fair trial in Jasper County. Mr. Burress says that he and Turley conferred for about thirty minutes, Turley outlined his past, including his prior felony convictions, "admitted to certain offenses in Kansas City, that the car

he had was a stolen vehicle" and, on inquiry, he "stated that he had given this confession" to the Joplin police. Burress advised Turley of the maximum punishment but the outstanding thing to Mr. Burress was that "he advised me of his great desire to plead guilty and this was the only thing he was interested in doing. He didn't wish to remain in the County Jail but insisted upon being sent to the Missouri State Penitentiary at the very earliest moment. He advised me that he had just finished his preliminary hearing in the Magistrate Court and that the term of Court passed him by and that he did not want to remain in the County Jail until the next term of Court and wished to make his guilty plea at that time." Incidentally, Turley said that before he signed the statement he knew he had a right to an attorney. Upon this evidence the court made this finding: "Now, the moving factor in this case wasn't the Prosecuting Attorney, it wasn't Mr. Burress, the moving person in this plea of guilty was the defendant, Virgil Lewis Turley. He's the man who wanted to enter a plea of guilty." As to Mr. Burress the court found: "He's highly competent in every way and the fact of the matter is that he didn't recommend to Mr. Turley that he plead guilty."

■ It is probably unnecessary to relate these circumstances in such detail because Turley's claim that he was "denied effective representation of counsel" is based not so much on the fact of hasty appointment of counsel 15 or 30 minutes before the plea which in and of itself is not determinative (State v. Pedicord, Mo., 437 S.W. 2d 87) but upon the allegation that the lawyer did not "question whether any of the evidence obtained by the Joplin Police Department was admissible," particularly whether his "confession," a written statement, was involuntary, and whether the "goods" found in his hotel room after "a waiver of search warrant" were obtained by an illegal search and seizure. Pointing to Escobedo v. State of Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977, and related cases, this point is argued at length

and it is urged that it was "ill advised" to permit a plea of guilty. Hasty appointment of counsel may result in prejudice, particularly in a *trial* (United States ex rel. Mathis v. Rundle, 3 Cir., 394 F.2d 748), but the difficulty with the appellant's position here is that the matters to which he points to prove his point, illegal search and seizure and involuntary confession, play but little part upon a voluntary plea of guilty. "It is settled by a host of authorities that a judgment on a plea of guilty which has been entered voluntarily on advice of counsel is not rendered invalid because the defendant had previously made a confession under circumstances which might have rendered it inadmissible in evidence if the defendant had pleaded not guilty and had gone to trial. * * * The judgment and sentence which follow a plea of guilty are based solely upon the plea and not upon any evidence which may have been acquired improperly by the prosecutor. Accordingly, a confession in the possession of the prosecutor which has been illegally obtained cannot be made the basis for a collateral attack upon a judgment of conviction entered upon a plea of guilty voluntarily and understandably made." Busby v. Holman, 5 Cir., 356 F.2d 75, 77–78; Reed v. Henderson, 6 Cir., 385 F.2d 995. And, it may be noted, the plea of guilty is to the court—not the prosecutor. The rule as to confessions applies also to the allegation of illegally obtained evidence, the plea of guilty, if voluntary, is conclusive as to guilt and waives all nonjurisdictional defects in prior proceedings. Franklin v. Wainwright, 5 Cir., 381 F.2d 322.

■ What has been said as to the hasty and belated appointment of counsel may inferentially at least dispose of the charge that the court did not discharge its duty before accepting the plea of guilty. As to this appellant's present counsel concede that "it can be argued the court did discharge its duty because it inquired into the background of defendant, asked if he understood the charge against him, whether he had conferred with his attorney, whether he had ample opportunity to consult with his attorney and whether there was anything mentally wrong." He urges, however, that the inquiry was "defective in certain other respects"—he says that in addition to all else the court should "pointedly disabuse accused and his counsel of their preconceived ideas" as to any agreement as to the appellant's understanding of the prosecutor's recommendation. In this connection it is said that the court "did not inquire if defendant was in fact guilty of the charges," and did not advise him that the court was not bound to accept the recommendation of the prosecuting attorney. And finally it is said that the court "could have ascertained movant's state of mind" when the plea was accepted.

It is not necessary to repeat the circumstances in detail, before the plea was accepted the court again had the information read to the appellant and while he said that he did not understand Missouri procedure he told the court that he understood the nature of the charges. He conceded that after the prosecutor in open court recited the facts and made a recommendation of seven years' imprisonment the court gave "him an opportunity to say anything about your sentence" and he answered in person that he had nothing to say. He now says, despite the recommendation and despite the court's unmistakable pronouncement and sentence "of four years for Burglary and three years for Stealing, *said sentence to run consecutively and not concurrently*" that he "thought it amounted only to four" as he says the prosecutor had agreed. As indicated, in its findings here the court reviewed in great detail the circumstances in which the plea was entered and a sentence of seven years imposed, that finding is convincingly supported and the mere fact that the punishment is more than he anticipated is not sufficient to demonstrate that the court did not discharge its duty before acceptance of the plea. State v. Pedicord, supra.

■ As to the assignment with respect to the court's duty as with the ulti-

mate and meritorious question of whether Turley's plea of guilty was involuntary and therefore should not have been received, it should be noted that "the burden of proving ground for relief rests on the prisoner" and the problem here—the court having conducted a full and complete hearing—is whether the findings of the trial court are clearly erroneous. Crosswhite v. State, Mo., 426 S.W.2d 67, 70. Appellant's present counsel, on the latter point, say that "He was *induced* to bargain for an agreement from the prosecutor; he was induced to enter a plea in hopes that the bargain would stand." But, at the risk of unnecessary repetition, the court found and that finding is supported not only in the state's testimony but in the appellant's prior experience of four felony convictions in three separate jurisdictions, "the moving person in this plea of guilty was the defendant, Virgil Lewis Turley. He's the man who wanted to enter a plea of guilty," and as the court observed "he has been a fairly good lawyer himself, although he is not admitted to the practice of law." If there were any agreements between the state's representatives and Turley, the state kept its bargains and caused the serious charges in Kansas City to be dismissed. In these circumstances the cases upon which appellant relies are inapplicable: State v. Smith, Mo., 421 S.W.2d 501; State v. Williams, Mo., 361 S.W.2d 772; State v. Blaylock, Mo., 394 S.W.2d 364. In part the court's findings are supported by the transcript, carefully preserved, on the original plea and the court was not bound to accept as true the appellant's oral charges to the contrary. State v. Harris, Mo., 382 S.W.2d 642, 643. In short, the court's finding of a plea of guilty understandably and voluntarily entered is overwhelmingly supported and the circumstances are governed by these cases: Crosswhite v. State, supra; State v. Good, Mo., 403 S.W.2d 594; State v. Williams, Mo., 391 S.W.2d 227; State v. Mountjoy, Mo., 420 S.W.2d 316.

Accordingly, the judgment is affirmed.

PER CURIAM:

The foregoing opinion by BARRETT, C., is adopted as the opinion of the court.

All of the Judges concur.

STOCKARD and PRITCHARD, CC., concur.