STATE of Missouri, Respondent,

v.

Virgil L. TURLEY and Albert Peterson,
Appellants.

No. 53994.

Supreme Court of Missouri,
Division No. 2.

March 9, 1970.

Motion for Rehearing or to Transfer to Court
En Banc Denied April 13, 1970.

John C. Danforth, Atty. Gen., Peter H. Ruger, Asst. Atty. Gen., Jefferson City, for respondent.

Virgil L. Turley and Albert L. Peterson, pro se.

BARRETT, Commissioner.

A jury found that on September 30, 1967, Virgil L. Turley and Albert Peterson were guilty of attempting to escape from the penitentiary in Jefferson City. Since they had prior felony convictions, the court, under the second offender act (RSMo 1959, Supp. § 556.280, V.A.M.S.), fixed Turley's punishment at four years' imprisonment and Peterson's punishment at three years' imprisonment.

Upon the trial of their cause the appellants were capably represented by two court-appointed lawyers and upon this appeal they are represented by a third lawyer who has capably and vigorously prosecuted their cause. In spite of all this counsel-representation, the appellants, ill-advisedly, have insisted upon filing their own separate personal pro se brief and, unknown to counsel, have written numerous letters to the court and have filed one or more motions— one of which has been sustained. While both Turley and Peterson have had considerable personal experience with the criminal law, and apparently are quite bright, their brief is highly technical, frivolous unsupported points are made, misplaced analogies are drawn and the long lists of cases reveal a most imperfect knowledge of the law. In addition, they have purposefully, in a transparently crafty sort of way, circumvented and frustrated appointed counsel in his attempt to properly brief and present the merits of their appeal. For example, in one of their joint communications, they have said, "He left the brief (in fact the transcript of their trial) with the provision that we return it to him within 15 days. In order that Mr. Seibel can be more easily relieved of his obligation as our attorney we will not return the transcript to him and thus, hopefully, he will not be able to file anything in our behalf. And anything he does file in our behalf we cannot be a part of and will not cooperate with him in any way." This jurisdiction "provides some reasonable alternative" (to "prison 'writ writers'") Johnson v. Avery, 393 U.S. 483,

89 S.Ct. 747, 21 L.Ed.2d 718, to assist indigent prison inmates in the preparation of post-conviction remedies (Criminal Rule 27.26, V.A.M.R.) and in addition, as here, in the spirit of Swenson v. Bosler, 386 U.S. 258, 87 S.Ct. 996, 18 L.Ed.2d 33, ·capable counsel, in this instance three lawyers, on both trial and appellate levels, have been appointed and have duly represented the appellants without compensation. Notwithstanding, insofar as it presents intelligible points or questions their pro se brief and additional record, as well as counsel's brief, will be duly considered.

■ One of the principal points is that the court erred in denying the appellants' motion to dismiss the amended information. Counsel submits that the amended information should have been dismissed because equal protection and due process were denied when at defendants' request the magistrate court refused to appoint counsel to represent them upon preliminary hearing. It is said that they were denied the right of confrontation and "more important to the defense, to learn in advance of trial the foundation of the charge and the evidence that will comprise the State's case so that the defense may be prepared to refute, wherever possible." Incidentally the only amendment to the information and of which defendants personally complain is of the date, the allegation of September 20 was amended to the correct date September 30 as permitted by the statute of jeofails, particularly as will appear in this instance. RSMo 1959, § 545.030(5) (6), V.A.M.S.; Cr.Rule 24.11; State v. Brookshire, Mo.App., 329 S.W.2d 252. It was in this connection that the appellants insisted upon the magistrate court proceedings to supplement the transcript. That record shows that when the appellants were first arraigned on October 10, 1967, they requested a preliminary hearing and the appointment of counsel to represent them. The record then recites that subpoenas for witnesses were requested and issued and that on November 22, 1967 "Both defendants appeared in person and withdrew their request for a preliminary hearing. *Both defendants waived their preliminary hearing*" and were "bound over for trial in the circuit court." State v. Crouch, Mo., 353 S.W.2d 597. In passing it should be noted that there is an inconsistency in the appellants' claim of right to counsel upon a mere preliminary hearing and their insistent attitude against counsel on appeal.

■ The amended information alleged that "on the 30th day of September, 1967, at Cole County, Missouri, the defendants, Virgil L. Turley and Albert Peterson, were persons sentenced to the custody of the State Department of Corrections of the State of Missouri and were lawfully confined in the Missouri State Penitentiary, an institution under the control of the State Department of Corrections, and that the said Virgil L. Turley and Albert Peterson, acting in concert, did unlawfully and feloniously attempt to escape therefrom and go at large, by then and there opening the outer doors of their cells located in the building, known as 'F Hall,' and climbing out of a window in said hall and climbing upon and over the outer wall of the Missouri State Penitentiary, and that they were apprehended in their attempt to escape * * *." Despite the appellants' complaint of a fatal failure to allege "intent," it may summarily be said that the information, in the language of the statute (RSMo 1959 Supp., § 557.351), appropriately charges the offense of an attempt to escape and sufficiently apprises the appellants of all the elements of the crime. State v. Rentschler, Mo., 444 S.W.2d 453; State v. Peck, Mo., 429 S.W.2d 247.

■ But in connection with this point and particularly in connection with the appellants' per se claim of failure of proof, variance and numerous other matters connected with both the proof and the information the indisputable circumstances of the offense should be briefly noted. On September 30, 1967, about midnight, senior guard Stock was on duty in tower 13 on the north side of the penitentiary, there was no

guard in tower 12 at that hour. The floodlights were on and in the area of tower 12 Stock saw some object and "finally I saw a hand come out from behind the tower and it had a rope in it." Stock alerted the control center and Guard Nevins and Lieutenant Morrow, in charge of the prison, appeared and "on top of the wall, on the walk outside the tower" there was "a head" and finally a man, Peterson. Halfway down the wall, on the outside, sitting on an old angle iron, formerly the support for a stairway, was Turley and "a rope hanging down there" both men about thirty feet from the ground. In the meanwhile a guard in charge of F-Hall made a head count, "pulled the covers" and in cells 25 and 27 supposedly occupied by Turley and Peterson there were "dummies" or "mockups" made to resemble sleeping inmates, but Turley and Peterson were missing. One of the hall windows was tied open with a "string." In addition to the "string" of which appellants complain and a diagram of F-Hall, which certainly, in the court's discretion (23 C.J.S. Criminal Law § 853 (1)) was admissible, the defendants had "khaki" prison-made pants on over their regular "prison greens." All these articles, connected with the defendants or with the offense—with the possible exceptions of the harmless, noninflammatory "string" were, of course, properly admissible in evidence. 22A C.J.S. Criminal Law §§ 600, 709 and 30A C.J.S. Escape § 26, p. 902: "Evidence is admissible to show the means employed in aiding one to escape; *and, in order to prove intent,* the prosecution may show what means were employed, and what acts were done in an attempt to escape." As the lieutenant and Nevins and the defendants were "going back inside" Peterson said to Nevins, "You can't blame a man for trying." This statement was "given freely and voluntarily without any compelling influences," it was not in response to even a question, let alone interrogation and does not fall within the ban of Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694. The circumstance and the remark are fairly comparable to Peck's

volunteered remark "Well, there went ten months of digging." State v. Peck, Mo., 429 S.W.2d 247, 251. The short of the matter is that unlike Turley's 1965 successful escape for one month and twenty-six days (State v. Turley, Mo., 442 S.W.2d 75), this is not even a circumstantial evidence case, both Turley and Peterson were literally caught in mid-air. And, needless to add, the proof supports the charge and the jury's verdict. State v. Rentschler; State v. Turley; State v. Peck, supra. But important here, particularly upon the complaint of lack of counsel at their preliminary, in addition to their waiver, is the fact that in these circumstances Turley and Peterson had firsthand knowledge of every possible witness as well as every circumstance in the state's knowledge and there was no possibility of prejudice to them from a lack of knowledge or "a chance to learn in advance * * * the evidence that would comprise the state's case." State v. Patrick, Mo., 420 S.W.2d 258; State v. Turley, supra; State v. Peck, supra. Furthermore, in these circumstances there was no infringement of state or federal constitutional safeguards and rights. State v. Jefferson, Mo., 426 S.W.2d 41; Pope v. Swenson, 8 Cir., 395 F.2d 321; Latham v. Crouse, 10 Cir., 320 F.2d 120.

■ Another point, presented from several facets, is that during the progress of the trial, at a recess, Turley and Peterson claim to have seen a state's witness, Lieut. Morrow, talking to a juror. As described by Peterson, in testifying on the motion for new trial: "Turley said, 'Look out there.' And I went and looked, and he said, 'That juror is talking to a witness.'" It is urged that this episode falls within the condemnation of Turner v. Louisiana, 379 U.S. 466, 85 S.Ct. 546, 13 L.Ed.2d 424, in which deputy sheriffs who were key witnesses were in continuous and intimate association with the jurors, fraternizing with them, eating with them and running errands for individual jurors—all in violation of the basic right to a fair trial and a denial of due process. Obviously, that is

not this case and the principle involved in the Turner case is at best but an analogy here.

It is not known here what, if anything, witness Morrow or the juror may have said to one another and so the instance is not comparable to a sheriff, a witness in a burglary case, relating to a juror "his experiences in connection with some burglary." State v. Jones, 363 Mo. 998, 255 S.W.2d 801 and State v. Tyarks, Mo., 433 S.W.2d 568. It is not known why at the court's invitation the state did not put the matter to rest, at least by calling Lieut. Morrow. However, on cross-examination there were these questions and answers to and by Turley: "Q. How long did you see Mr. Morrow talking to this juror? A. Not long, just a short conversation. I just happened to glance over in that direction. *I called Peterson's attention to it and called Mr. Hendrick's* (one of his trial lawyers) *attention to it,* and by that time I think the juror had left. * * * *You are sure you informed your attorney of this fact? A. Yes, sir. By the time he walked over there, it was too late."* Thus plainly any claimed misconduct in a witness talking to a juror (State v. Miles, Mo., 364 S.W.2d 532, 9 A.L.R.3d 1266) was well known to Turley, Peterson and, according to Turley only, to their counsel while the trial was in progress but the incident was not mentioned and there was no attempt to explore the matter until after an unfavorable verdict and belatedly in a motion for new trial. "Where misconduct of jurors is first presented at that stage an affirmative showing must be made that defendant and his counsel were ignorant of the fact until after the trial." State v. Reeder, Mo., 394 S.W.2d 355, 357. Or as said in the annotation, 9 A.L.R.3d 1. c. 1283, "The impropriety in a communication between a witness and a juror may be of no avail to defendant if, having knowledge thereof, he fails to make prompt objection or motion for new trial based thereon" and see annotation 96 A.L.R. 530. In these circumstances there was no abuse of dis-

cretion in the court's denial of a new trial on this specified ground. State v. Miles, supra.

■ As to these circumstances and the claim of jury separation the trial was concluded in a single day and the court found, again on motion for new trial only—there was no assertion of improper jury separation during the course of the trial, "With reference to ground 8 regarding the matter of the jury being permitted to separate during recesses, it's the court's recollection that throughout the trial the only separation made by the jury was at the noon recess. We had recesses in the courtroom, but the jury was in the immediate vicinity of the court. The members of the jury that went to the rest room is a part of the courtroom—in this area, except for the noon hour." The court then described its "sort of a shorthand method" of minutes and the court said that at a noon recess his memorandum showed "O.K. for the jury to separate." In explanation the court said that after seeing that note (on June 12th, one month and eleven days after the trial) "it is the feeling of the Court that the Prosecuting Attorney and at least one of the attorneys for the defendants agreed to the separation of the jury during the noon hour." There was no refutation or challenge of the court's statement, and all the parties and counsel were present on this belated occasion and thus there was no unpermitted jury separation: "With the consent of the prosecuting attorney and the defendant, the court may permit the jury to separate at any adjournment or recess of the court during the trial in all cases of felony, except in capital cases." RSMo 1959, § 546.230, V.A.M.S.; State v. McVey, Mo., 66 S.W.2d 857.

■ In the appellants' pro se brief there is a claim of error in the court's denial of their "motion to dismiss the jury panel" for the reason of their "being paraded before members of that jury panel (in handcuffs) accompanied by uniformed officers of the penitentiary." It is not

necessary to pause in consideration of this unusual motion in support of which is cited only the Sixth and Fourteenth Amendments to the Constitution of the United States. At the opening of the trial their counsel announced to the court that their clients had advised that when they were "brought into the courthouse, this morning, they were brought in in handcuffs and chains and were brought in by a route that took them past the jury panel, which was then assembled out in the hall outside of the courtroom" and so a new jury panel was requested. Whereupon the court immediately conducted another and separate hearing. The guard who brought them to court was sworn and testified that the defendants were dressed in "civilian clothing * * * suit and tie—and white shirt." As they came to the courthouse at 8:50 they were in "normal restraint"—"a chain around the midriff with the handcuff through it and each are cuffed to it." The guard brought them up the steps and he said "There were four or five men at the top of the stairs when we came up. Who they were, I do not know." At this point the judge interjected that the trial was due to commence at 9 o'clock, that when he entered the courthouse "it was twelve minutes until 9, according to my watch. I came up the steps. Of course, I haven't seen the jury panel, but there were four people standing in the hallway, at the head of the stairs, in front of the Clerk's office, when I walked across. There wasn't any large panel; there were four men. I don't know whether they were jurors or not." And finally the judge concluded, "In view of the charge, attempted escape, the Court finds there was no undue prejudice in the manner in which they were brought in and motion and objections are overruled."

There was no other proof or offer of proof, it does not appear that any prospective juror who may have seen the appellants in shackles and handcuffs became a member of the jury. In a similar situation the Eighth Circuit Court of Appeals said, "To justify a new trial this alleged error must appear to have seriously affected the fairness of the trial. * * * The burden of proof to sustain this allegation is on the appellant. * * * The handling of the defendant during the trial is best regulated by the trial court and is a matter for its sound discretion. * * * For this court to question the discretion of the trial court, the record needs to show something more than the mere fact defendant was handcuffed in the presence of the jury. * * * If, as in the instant case, the record does not show the occurrence was prejudicial, the motion for a new trial will be denied. * * * It is significant that the appellant's claim is based only on an isolated incident." Gregory v. United States, 365 F.2d 203, 205. See also State v. Caffey, Mo., 404 S.W.2d 171 and State v. Sallee, Mo., 436 S.W.2d 246.

A final allegation of error, asserted as a ground for a new trial, has to do with the allegation and proof of the appellants' prior felony convictions and the application of the second offender act, resulting here in the court's fixing the punishment rather than the jury. As to Turley the state alleged and proved a prior conviction of burglary in Jasper County in 1965 and as to Peterson a prior conviction of burglary in Platte County in 1966. Incidentally, Peterson's prison dossier, even though he is now only 30 years old, shows prior sentences to the federal reformatory at El Reno, Oklahoma, the Oklahoma state prison at McAlester, the federal penitentiary at Leavenworth, Kansas, and finally in the United States medical center at Springfield. Turley's record shows, in addition to the burglary conviction and the other escape conviction (State v. Turley, Mo., 416 S.W.2d 75), prior sentences from a boy's industrial school in Pine Bluff, Arkansas, to the Department of Corrections in Huntsville, Texas, to the federal penitentiary at Leavenworth, Kansas. In passing sentence in this case the trial court noted these records. But because the state relied on their most recent felony convictions the appellants misguidedly rely on this section

of the second offender act "(3) If the prior conviction is appealed then this section does not apply until after the judgment is affirmed or the appeal is dismissed." RSMo 1959 Supp., § 556.280, V.A.M.S. The fact was that Turley had entered a plea of guilty to the charge of burglary and stealing in Jasper County on June 14, 1965, and, of course, that "conviction" had not been "appealed" and was not pending on appeal. Likewise Peterson on April 27, 1966, had entered a plea of guilty to burglary and stealing and had been sentenced to ten years' imprisonment and there was no appeal of that conviction. What the appellants now rely on is the fact that they had both instituted 27.26 proceedings in connection with their prior convictions and appeals were pending in those proceedings (State v. Turley, Mo., 416 S.W.2d 75, Peterson v. State, Mo., 444 S.W.2d 673) which up to this point have not been construed to constitute an "appealed" conviction. Incidentally, appellants assert in their pro se brief that they now have, presumably relating to these same convictions, cases pending in the Supreme Court of the United States and in the United States District Court. Applicable here is State v. Adams, Mo., 380 S.W.2d 362: "It is claimed that the information was defective in that it did not allege that the prior convictions were 'final judgments,' and that therefore evidence of prior convictions was improperly admitted. Our statute, § 556.-280, Laws 1959, does not require any such allegation. By its last subsection it is provided that if a prior conviction has been appealed the section shall not apply until the appeal has been disposed of. While the State should not, of course, allege or show any prior conviction or convictions from which it knows an appeal or appeals are pending, we hold that this statute does not put an initial burden upon the State to allege and prove that there has been no appeal. If such a situation exists, the defendant will know that fact and may raise the question affirmatively. The evidence of prior convictions is now taken outside the presence of the jury, and defendant is always represented by counsel. Moreover, in this case the question is *moot,* because all of the prior judgments of conviction were entered upon pleas of guilty, which would certainly preclude any appeal in the ordinary sense." Of course, with records such as Turley's and Peterson's, the state should not permit any question to arise as to the applicability of the second offender act thus forestalling further post-conviction proceedings. But here when the state was proving the prior felony convictions the appellants' only objection was "I wish to point out to the Court that the State has failed to prove that these convictions and sentences are now pending on appeal." This, according to the Adams case, was not one of the state's burdens.

For the indicated reasons the judgment is affirmed.

STOCKARD and PRITCHARD, CC., concur.

PER CURIAM.

The foregoing opinion by BARRETT, C., is adopted as the opinion of the court.

All of the Judges concur.