**Virgil Lewis TURLEY, Petitioner,**

v.

**Harold R. SWENSON, Warden, Respondent.**

**No. 1424.**

United States District Court, W. D. Missouri, C. D.

July 24, 1970.

Lewis E. Pierce, Kansas City, Mo., for petitioner.

John C. Danforth, Atty. Gen., Gene E. Voigts, First Asst. Atty. Gen., State of Mo., Jefferson City, Mo., for respondent.

## MEMORANDUM AND ORDER

JOHN W. OLIVER, District Judge.

### I.

This case involves petitioner's second federal habeas corpus attack on a seven year sentence imposed on June 14, 1965 on petitioner's plea of guilty by the Circuit Court of Jasper County, Missouri. The State trial court's denial of petitioner's first Rule 27.26, V.A.M.R., motion, filed January 14, 1966, was affirmed by the Supreme Court of Missouri on June 12, 1967, with Judge Seiler concurring in result and dissenting in part. See State v. Turley, (Mo.Sup.Ct., Div. 1, 1967) 416 S.W.2d 75.

Petitioner's first federal habeas petition, Turley v. Swenson, No. 1219 (October 30, 1967 (unreported)) attempted to present two federal questions (a) denial of counsel at preliminary hearing; and (b) ineffective assistance of counsel at the time of petitioner's arraignment, plea, and sentence.

Petitioner's first federal habeas petition was dismissed without prejudice for the following stated reasons:

We find it unnecessary to determine at this time whether or not the denial of counsel at a preliminary hearing under Missouri procedure amounts to a denial of due process of law or equal protection of the laws. (See State v. Turley, *supra,* Judge Seiler's concurring opinion.) Petitioner is in custody pursuant to a conviction based on his plea of guilty. That plea was entered with the advice of counsel, and petitioner makes no contention in this Court that it was not entered volun-

tarily and knowingly. A guilty plea voluntarily entered constitutes a waiver of all non-jurisdictional defects at any prior stage in the proceedings. Emmett v. Balkcom, (5th Cir., 1966) 358 F.2d 302; Engling v. Crouse, (10th Cir., 1966) 357 F.2d 267; Gallegos v. Cox, (9th Cir., 1966) 358 F.2d 703; U. S. ex rel. Pizarro v. Fay, (2nd Cir., 1965) 353 F.2d 726. We will therefore deny petitioner the relief he seeks as to the question of counsel at preliminary hearing.

As to petitioner's second contention, the ineffective assistance of counsel, this question has clearly not been raised in the state courts. We will, therefore, dismiss that contention for failure to exhaust available state court remedies.

Thereafter, petitioner, on January 29, 1968, filed a second Rule 27.26 motion in the Circuit Court of Jasper County. The denial of that motion was affirmed by the Supreme Court of Missouri on March 10, 1969, in Turley v. State, (Mo. Sup.Ct., Div. 2, 1969) 439 S.W.2d 521.

Petitioner's second federal habeas corpus petition alleges that:

(a) Petitioner was denied effective representation of counsel during his arraignment, plea and sentencing.

(b) Petitioner was denied representation of counsel, when requested, at all proceedings from arrest throughout his preliminary examination.

(c) Petitioner's plea of guilty was entered involuntarily, unknowingly, and was, in effect, coerced.

The parties have stipulated, and we find, that "petitioner has fully exhausted the remedies afforded him under the laws of the State of Missouri for the relief he seeks in this proceeding" (Paragraph 1 of Stipulation). After having been afforded an opportunity to adduce additional evidence, the parties also "agreed that the federal questions presented in this habeas corpus proceeding may be submitted on a stipulated record

[and that] no further evidence or hearing, unless ordered by the Court, need be held or introduced other than this Stipulation and the documents identified herein" (Paragraphs 2 and 5 Stipulation).

The documents identified included all the reported proceedings in the trial court and all records and briefs filed in the Supreme Court of Missouri in connection with both of petitioner's unsuccessful Rule 27.26 appeals. In light of the fact that neither party wished to adduce any additional evidence, it is proper for this Court to rule this case on the stipulated records.

Consistent with principles enunciated in Townsend v. Sain, 372 U.S. 293 at 318, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963), we defer to and accept all findings reliably found by the Supreme Court of Missouri in 439 S.W.2d 521. The following seven findings are made in exactly the same language as that used by the Supreme Court of Missouri in its opinion:

1. Turley was arrested on May 30, 1965.

2. He was given a preliminary hearing on June 9, 1965, and bound over to the Jasper County Circuit Court for trial.

3. On June 10, 1965, an information was filed charging Virgil Lewis Turley with burglary and larceny.

4. Turley was brought from Carthage to Joplin on June 14, 1965.

5. When Turley was transferred from Carthage to Joplin and appeared in Circuit Court on June 14th to enter a plea of guilty, Judge Watson refused to accept the plea until Turley had an opportunity to consult a lawyer.

6. Mr. Burress presented [himself] to Judge Watson who advised [him] that [he] was representing an indigent prisoner who was Mr. Turley.[1]

7. Mr. Burress' hasty and belated appointment was not made until 15 or 30 minutes before the plea.[2]

The Supreme Court of Missouri properly recognized the factual base upon which petitioner's claim of ineffective assistance of counsel was predicated. It stated that:

Turley's claim that he was "denied effective representation of counsel" is based * * * upon the allegation that the lawyer did not "question whether any of the evidence obtained by the Joplin Police Department was admissible," particularly whether his "confession," a written statement, was involuntary, and whether the "goods" found in his hotel room after "a waiver of search warrant" were obtained by an illegal search and seizure.[3] [439 S.W.2d at 524].

---

1. The transcript of the June 14, 1965 sentencing procedure shows that Mr. Burress had seen petitioner "at the request of the prosecuting attorney" earlier that morning [June 14, 1965 Tr. 11]. The question and answer from the Rule 27.26 transcript quoted by the Supreme Court of Missouri stated:

Q. Can you tell the Court the circumstances surrounding your meeting with the defendant on that day?

A. I received a phone call early the morning of the 14th, I'd say 9:00 or 9:30, asking that I come over to the Courthouse. I don't recall now just who called, but I did come over to the Courthouse and presented myself to Judge Watson who advised me that I was representing an indigent prisoner

who was Mr. Turley. [January 29, 1968 Tr. 62–63]

2. The Supreme Court noted in its opinion that petitioner testified that "I believe I'd be stretching it a little to say fifteen minutes before the guilty plea was entered," and that "Mr. Burress says that he and Turley conferred for about thirty minutes" [439 S.W.2d at 524]. The Supreme Court of Missouri's descriptive finding that Mr. Burress' appointment was "hasty and belated" was made at 525 of 439 S.W.2d.

3. The full allegation in petitioner's Rule 27.26 motion from which the Supreme Court of Missouri partially quoted stated the following:

Movant did not receive benefit of counsel until a few minutes before ar-

In regard to the crucial factual circumstances concerning what legal assistance, if any, Mr. Burress gave petitioner in regard to those questions, the Supreme Court of Missouri paraphrased but a portion of Mr. Burress' direct examination. It stated that:

Mr. Burress says that he and Turley conferred for about thirty minutes, Turley outlined his past, including his prior felony convictions, "admitted to certain offenses in Kansas City, that the car he had was a stolen vehicle" and, on inquiry, he "stated that he had given this confession" to the Joplin police. Burress advised Turley of the maximum punishment but the outstanding thing to Mr. Burress was that "he advised me of his great desire to plead guilty and this was the only thing he was interested in doing. He didn't wish to remain in the County Jail but insisted upon being sent to the Missouri State Penitentiary at the very earliest moment. He advised me that he had just finished his preliminary hearing in the Magistrate Court and that the term of Court passed him by and that he did not want to remain in the County Jail until the next term of Court and wished to make his guilty plea at that time." [Ibid]

Petitioner's testimony and that given by Mr. Burress at the Rule 27.26 hearing is not in substantial conflict. In regard to what else was discussed between the petitioner and his appointed counsel, petitioner testified:

Q. Now, can you recall what Mr. Burress discussed with you before you entered your plea of guilty in the Circuit Court?

A. About all he said was inquiring as to my background and he assured me that—

Q. When you say "background," what background are you talking about now? Now, what specifically do you recall that he inquired about?

A. How old I was and where I was born and my mother and father, whether they were living or dead and various things of that nature. I don't recall everything that was said.

\* \* \* \* \* \*

Q. Did Mr. Burress discuss with you the evidence which had been obtained by the Prosecutor's office?

A. No, sir, he didn't.

Q. Did he ever discuss with you the confession which had been obtained by the Prosecutor?

A. No, sir, he didn't.

Q. Did he ever indicate to you whether or not he was aware that a confession had been obtained?

A. No, sir, not as I recall.

Q. Certainly he did not discuss the circumstances under which the confession was obtained?

A. No, sir.

Q. What about the waiver of the search warrant which the Prosecutor's Office had obtained?

A. Well, this was obtained, or I signed it, about the time that the confession was signed. It was after the search had been—

Q. Was this discussed with Mr. Burress?

A. No, sir.

---

raignment, plea and sentencing. Because of the length of time allotted to appointed counsel, said counsel was unable to and did not confer with movant or advise him with regard to:
1. The admissibility of evidence obtained pursuant to the search and seizure of goods in movant's hotel room.
2. The admissibility into evidence of the confession obtained involuntarily.

3. Whether, in fact, the State had obtained any admissible evidence upon which to base a conviction.
4. Whether, in fact, the prosecuting attorney had reached an agreement with movant to recommend that his sentences, if any, would be concurrent. [Tr. 7–8 1/29/68].

Q. During the time immediately before your plea, then, did Mr. Burress ever discuss the evidence obtained against you?

A. No, sir.[4] [Tr. 20–21, 1/29/68]

Mr. Burress testified on cross-examination as follows:

Q. All right. Did you cover anything else [other than Mr. Turley's previous record and family background] with him or, better yet, did you have time to cover anything else with him?

A. Oh, yes, I discussed the circumstances with him slightly from the standpoint of what he had done and the fact of his apprehension and the fact that he had given a statement of confession. * * *

Q. All right. Now, with regard to this evidence that you have just mentioned, did you discuss with Mr. Turley whether it was admissible into evidence in case he decided to enter a not guilty plea and have his case tried?

A. Yes, I did ask him about the—particularly about the confession that he had made. We did discuss it. He stated that he had given this confession, as I understood it, to the Joplin police and that he affirmed—had affirmed this confession.

Q. Well, did you ever discuss whether or not it was admissible into evidence in the event the case was tried?

A. I just don't recall how much we did have a bit, quite a bit of conversation about this business of the confession but I don't recall whether I discussed with him particularly the admissibility of that particular confession into evidence.

Q. All right. Now, with regard to the remaining evidence, that is, the goods or the materials, whatever it was, that the police had obtained when they searched the hotel room, did you discuss with Mr. Turley the legality of that search of the hotel room?

A. Well, in the first place, I don't recall about a search of a hotel room. The man told me about the search of the vehicle, that he—at the time, that he was picked up that he stated to them that certain materials were in this car, that he had obtained these materials by various and sundry means in Kansas City, Missouri, and that this car was parked in the vicinity of the police station and he told them where the car was and what was in it and that they should go and get it.

Q. All right. Now, you mentioned goods from Kansas City. What about goods allegedly taken from

---

4. Petitioner later testified on cross-examination as follows concerning the circumstances of the search of the hotel room:

Q. All right. Now, among this other testimony that you've put forth here today, I believe you said the search had already been made when you signed the waiver, is that correct?
A. I was sure of that, yes, sir.
Q. Well, had it or hadn't it?
A. As far as I could tell. You know, I was locked up, but—
Q. Well, then, you don't know whether the search had been made before you signed the waiver?
A. Only that the thing was setting in the floor in front of me is all I know.
Q. And, they supposedly came from your hotel room?

A. Yes, sir.
 *  *  *  *  *
Q. Well, did you take them and put them in your hotel room?
A. No, I didn't.
Q. How did they get there?
A. By somebody else.
Q. I see. Who else had a key to your room?
A. No key to the room, just one of those cheap hotels—didn't have a lock on it, I don't believe.
Q. So, after the items were there, you signed a wavier for them to go search your hotel room, is that what you are telling the Court?
A. Yes, sir. [Tr. 36–37 1/29/68].

the Scottish Rite Temple here in Joplin?

A. As I understand it, the material was all there in one place.

Q. In the car?

A. Yes, as I best recall.

Q. All right, sir. Now, did you ever discuss with Mr. Turley whether any of this evidence, any of these materials, goods, chattels, had been obtained from a hotel room at the Hotel Besse?

A. I did not.

Q. Did you ever discuss whether a search warrant had issued?

A. I did not.

Q. All right, sir, and did you ever discuss whether or not that evidence was admissible into evidence?

A. As best as I recall, no. [Tr. 66–68, 1/29/68]

There was, of course, evidence that the petitioner wanted to enter a plea of guilty and that, as Mr. Burress testified, petitioner told him that "he had just finished his preliminary hearing in the Magistrate Court and that the term of Court passed him by and that he did not want to remain in the County Jail until the next term of Court and wished to make his guilty plea at that time" [439 S.W.2d at 524]. The fact that petitioner was the "moving factor" and the "man who wanted to enter a plea of guilty" [439 S.W.2d at 524] does

not support the trial court's findings implicitly approved by the Supreme Court of Missouri, that "all this came up because he was the moving factor in this situation and the Court finds that the defendant was properly represented by counsel; that he voluntarily and of his own accord * * * entered a plea of guilty * * *" [Tr. 80–81].

■ We find that there is no substantial evidence that petitioner waived his federally protected right to the effective assistance of counsel and that, under all the facts and circumstances, including the matters discussed by petitioner and his appointed counsel at what could not have been more than a thirty-minute conference immediately before petitioner's plea of guilty, petitioner has satisfied the burden of proof that his plea of guilty was not voluntarily intelligently, and understandingly made.[5]

It is obvious that substantial questions concerning the applicability of principles stated in Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964); Escobedo v. Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964); and Mapp. v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961), were presented under the factual circumstances of this case. Under all those circumstances it cannot fairly be found that petitioner's sole reason for pleading guilty was his desire to get out of the County Jail or to dispose of other pending criminal cases. Nor is there any substantial evidence that petitioner would

---

5. Petitioner has consistently maintained that he is not guilty of the offense to which he entered his plea of guilty. At the Rule 27.26 hearing he testified:

Q. All right. Now, are you telling the Court that you did not, in fact, enter a plea of guilty because you were guilty?
A. Yes, sir.
Q. That is what you are telling the Court now?
A. Yes, sir.
THE COURT: What is your answer to that?
THE WITNESS: Yes, sir.
Q. And you are telling the Court that you entered your plea of guilty for these

reasons that you and I have just talked about and not because you were guilty of this offense, that correct?
A. Yes, sir.
Q. And are you now telling the Court that you did not commit this offense, that correct?
A. Yes, sir.
Q. You are certain of that?
A. Yes, sir.
Q. I want to remind you that you are under oath.
A. Yes, sir.
Q. Do you understand what that means?
A. Yes, sir. [Tr. 25–26].

have entered his plea regardless of any legal advice which might have been given him in regard to the questions presented. Petitioner testified that he had been "assured by Mr. Baldridge [the Prosecuting Attorney] that the evidence they had obtained [which] I believe now to be * * * fruits of an illegal search, plus signed statements by me, he claimed that these could be used by him in court" [Tr. 18]. He also testified that Mr. Baldridge "assured me that he would, in fact, get a conviction without a doubt, using that evidence * * * [Tr. 19]. Mr. Baldridge did not put that testimony in issue. He testified only that he could not recall whether he had discussed with petitioner the case he had against him [Tr. 59]. Those circumstances are significant only to show petitioner's need for independent counsel and to show that without effective assistance from such counsel his determination to plead guilty cannot be found to be knowing and intelligent.

## II.

■ The Supreme Court of Missouri was of the opinion that petitioner's three separate claims of (a) ineffective assistance of counsel; (b) the trial court's alleged failure to discharge its duty when it accepted petitioner's plea; and (c) the alleged involuntariness of petitioner's plea were all "inter-related" [439 S.W.2d at 523]. It noted with apparent approval that "the state treats them [the three separate claims] as one point, contending that Turley's plea of guilty was voluntarily and knowingly entered and that therefore the judgment should be affirmed" [439 S.W.2d at 523]. Accordingly, that court did not attempt

to articulate in any detail the federal standards applicable to an ineffective assistance of counsel case.[6]

The Supreme Court of Missouri, in reliance upon State v. Pedicord, (Sup. Ct. of Mo., Div. 1, 1969) 437 S.W.2d 87, concluded that "the fact of hasty appointment of counsel 15 or 30 minutes before the plea, * * * in and of itself is not determinative" [439 S.W.2d at 524]. It added, however, that:

Hasty appointment of counsel may result in prejudice, particularly in a *trial* (United States ex rel. Mathis v. Rundle, 3 Cir., 394 F.2d 748), but the difficulty with the appellant's position here is that the matters to which he points to prove his point, illegal search and seizure and involuntary confession, play but little part upon a voluntary plea of guilty. [439 S.W.2d at 525]. (Emphasis the Supreme Court of Missouri's.)

To support the notion that questions which relate to illegal search and seizures and to involuntary confessions "play but little part upon a voluntary plea of guilty," the Supreme Court of Missouri quoted from that part of Busby v. Holman, (5th Cir., 1966) 356 F.2d 75, 77–78, which states that "a plea of guilty which has been entered voluntarily *on advice of counsel* is not rendered invalid because the defendant had previously made a confession under circumstances which might have rendered it inadmissible in evidence if the defendant had pleaded not guilty and had gone to trial" (emphasis ours) [439 S.W.2d at 525].

It also stated, in reliance upon the per curiam reported in Franklin v. Wainwright, (5th Cir., 1967) 381 F.2d

---

6. The trial judge frankly stated his view that "I don't feel that it's necessary for appointed counsel to go to the trouble and the difficulty of searching the entire record of a case, checking all the evidence when an individual tells him that he is guilty of the offense of which he is charged, that he wants to enter a plea of guilty to that charge, he wants to get it over with and start serving his time and that is what was done in this case."

The Supreme Court of Missouri's apparent approval of the trial court's finding and conclusion that Mr. Burress was generally "highly competent in every way" (439 S.W.2d at 524) is, of course, irrelevant. See Goodwin v. Swenson, (W.D. Mo., 1968) 287 F.Supp. 166, at 182, and cases there cited.

322, that "the rule as to confessions applies also the allegation of illegally obtained evidence, the plea of guilty, *if voluntary,* is conclusive as to guilt and waives all non-jurisdictional defects in prior proceedings" [439 S.W.2d at 525].

Neither Busby v. Holman, Franklin v. Wainwright, nor Reed v. Henderson, (6th Cir., 1967) 385 F.2d 995 (the only other federal case cited by the Supreme Court of Missouri on this point), supports the proposition that a plea of guilty may properly be considered voluntary when the circumstances of a particular case establish that a particular petitioner was denied the effective assistance of counsel and that he had not intentionally relinquished or abandoned known rights or privileges accorded him by applicable law. See Johnson v. Zerbst, 304 U.S. 458 at 464, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938).

In Pedicord v. Swenson, (W.D.Mo., 1969) 304 F.Supp. 393, 396 (appeal pending), aff'd in part 431 F.2d 92 (8 Cir., August 13, 1970), in which we granted habeas to the defendant involved in State v. Pedicord, *supra,* we noted that "it was over forty years ago that Mr. Justice Butler stated for a unanimous court in Kercheval v. United States, 274 U.S. 220, 283, 47 S.Ct. 582, 71 L.Ed. 1009 (1927), [that] 'a plea of guilty shall not be accepted unless made voluntarily *after proper advice.'*" We also there directed attention to the familiar principles articulated in Johnson v. Zerbst and quoted that portion of that opinion which stated that a waiver of a federally protected right could not be held to be valid unless "made with an apprehension of the * * * possible defenses to the charges * * * and all other facts essential to a broad understanding of the whole matter" (304 F. Supp. at 397).

United States ex rel. Mathis v. Rundle, (3rd Cir., 1968) 394 F.2d 748, does not in any way suggest that the principles applicable to the "hasty appointment of counsel" are confined to or are more particularly applicable to cases which go to *trial,* as distinguished from those in which the defendant is convicted on his plea of guilty, as the Supreme Court of Missouri intimates in connection with its citation of that case. That case cited and relied upon trial and guilty plea cases indiscriminately.

The recent decisions of the Supreme Court of the United States in McMann v. Richardson, 397 U.S. 759, 90 S.Ct. 1441, 25 L.Ed.2d 763, decided May 4, 1970, and Brady v. United States, 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747, decided on the same day, articulate and reiterate the principles applied in the earlier Supreme Court of the United States cases cited and discussed in *Pedicord* and *Goodwin.* Those cases are: Kercheval v. United States, *supra;* Powell v. State of Alabama, 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158 (1932); Johnson v. Zerbst, *supra;* Avery v. State of Alabama, 308 U.S. 444, 60 S.Ct. 321, 84 L.Ed. 377 (1940); Glasser v. United States, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942); Adams v. United States ex rel. McMann, 317 U.S. 269, 63 S.Ct. 236, 87 L.Ed. 268 (1942); Hawk v. Olson, 326 U.S. 271, 66 S.Ct. 116, 90 L.Ed. 61 (1945); Von Moltke v. Gillies, 332 U.S. 708, 68 S.Ct. 316, 92 L.Ed. 309 (1948); Chandler v. Fretag, 348 U.S. 3, 75 S.Ct. 1, 99 L.Ed. 4 (1954); Pennsylvania ex rel. Herman v. Claudy, 350 U.S. 116, 76 S.Ct. 223, 100 L.Ed. 126 (1956); Moore v. State of Michigan, 355 U.S. 155, 78 S.Ct. 191, 2 L.Ed.2d 167 (1957); Machibroda v. United States, 368 U.S. 487, 82 S.Ct. 510, 7 L.Ed.2d 473 (1962); Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963); United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967), and Anders v. State of California, 386 U.S. 738, 87 S. Ct. 1396, 18 L.Ed.2d 493 (1967).

The rationale of McMann v. Richardson is based on the circumstance that the decision of a *properly counseled* defendant "to plead guilty or not turns on whether he thinks the law will allow his confession to be used against him" and upon the idea that "a guilty plea in such circumstances is nothing less than a refusal to present his federal claims to

the state court in the first instance. * * * " But the Supreme Court made clear that: "Whether his plain bypass of state remedies was an intelligent act depends on whether he was so incompetently advised by counsel concerning the forum in which he should first present his federal claim that the Constitution will afford him another chance to plead." [7]

Brady v. United States, in contrast to McMann v. Richardson, involved a properly counseled defendant. The validity of the defendant's plea of guilty was affirmed without dissent. Brady v. United States reiterated that "the requirement that a plea of guilty must be intelligent and voluntary to be valid has long been recognized." The defendant in *Brady* was held to his plea of guilty because he was "represented by competent counsel throughout" and because he had in fact been given a "full opportunity to assess the advantages and disadvantages of a trial, as compared with those attending a plea of guilty."

The standards of performance required of defense counsel have been clear since the time Powell v. Alabama was decided almost forty years ago. The Supreme Court explicitly stated that no new standards were articulated or applied in McMann v. Richardson and Brady v. United States. In our judgment there is no legitimate question of retroactivity involved in this case, but to avoid any such question we expressly apply only the Supreme Court cases cited above which were decided before June 14, 1965, the date of petitioner's guilty plea.

Under the facts as we have found them, we are required to conclude that petitioner's right to the effective assistance of counsel was denied and that under all the facts and circumstances it cannot fairly be said that petitioner's

plea of guilty was a knowing and intelligent act.

We recognize that the transcript of the sentencing proceedings shows that the trial court asked Mr. Burress whether he had "discussed this matter fully with the defendant," and that Mr. Burress replied: "I pointed out all of his rights to him and the best course under the circumstances to take" [Tr. of June 14, 1965, 13]. The difficulty with this case, however, is that when inquiry was made at the Rule 27.26 hearing in regard to the specifics to support those conclusory statements, the testimony adduced shows that appointed counsel did not really do anything except agree with the defendant that he should go ahead and plead guilty. Mr. Justice Sutherland made clear in Powell v. Alabama that "it is not enough to assume that counsel * * * precipitated into the case thought there was no defense, and exercised their best judgment in proceeding * * * without preparation. Neither they nor the court could say what a prompt and thoroughgoing investigation might disclose as to the facts. No attempt was made to investigate. No opportunity to do so was given" (287 U.S. at 58, 53 S.Ct. at 60).

If it had been established that petitioner's appointed counsel had in fact discussed the factual situation relating to the alleged offense in sufficient detail to advise the petitioner of any possible factual and legal defenses which might have been available; and if petitioner, will full knowledge of those possibilities nevertheless understandingly wished to forego the presentation of any and all such possible defenses, an entirely different factual situation would have been presented. The circumstances established in this case, however, do not support a finding that petitioner's plea

---

7. See also the Supreme Court's conclusion that "a plea of guilty in a state court is not subject to collateral attack in a federal court on the ground that it was motivated by a coerced confession *unless the defendant was incompetently advised by his attorney*." [emphasis ours]. And see its further conclusion that a defendant is not bound by his plea of guilty if he "can allege and prove serious derelictions on the part of counsel sufficient to show that his plea was not, after all, a knowing and intelligent act."

was tendered in light of any reasonably competent advice given in regard to those questions and accordingly we cannot conclude that his plea was voluntarily, intelligently, and understandably made.

### III.

Petitioner has again presented the question of whether he was unconstitutionally denied counsel at his preliminary hearing. The Attorney General suggested in his brief that "the determination of this issue may be governed by the decision of the Supreme Court of the United States in Coleman v. Alabama, (No. 72, October Term 1969) (38 Law Week 3002, 3191) which was argued in the Supreme Court of the United States on November 18, 1969." Coleman v. Alabama was decided June 22, 1970, 399 U.S. 1, 90 S.Ct. 1999, 26 L.Ed.2d 387. Applying principles articulated in Powell v. Alabama, *supra*; Hamilton v. Alabama, 368 U.S. 52, 82 S.Ct. 157, 7 L.Ed. 2d 114 (1961); White v. Maryland, 373 U.S. 59, 83 S.Ct. 1050, 10 L.Ed.2d 193 (1963); United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926 (1966); Gilbert v. California, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967); and other cases, the Supreme Court determined that Alabama's preliminary hearing is a critical stage of the criminal proceeding at which the Sixth Amendment requires the appointment of counsel.

We need not, and therefore do not, reach the preliminary hearing question presented in this case. It is not inappropriate, however, to state that any factual base for petitioner's claim of ineffective assistance of counsel at the time of his plea of guilty probably would not have come into being had counsel been appointed an appropriate time prior to the preliminary hearing and had such counsel, after proper preparation, rendered effective assistance to the petitioner at that time.[8]

### IV.

We are cognizant of the fact that petitioner unsuccessfully raised a question concerning his preliminary hearing in State v. Turley, (Sup.Ct.Mo., en banc, 1969) 442 S.W.2d 75, in which (again over Judge Seiler's dissent) petitioner's conviction for escape from the Missouri Penitentiary on August 12, 1965 was affirmed.

We also know that a variation of the same preliminary hearing question (complicated by a further question of whether petitioner may have waived such a right under the familiar principles of Johnson v. Zerbst) was presented in State v. Turley, (Sup.Ct.Mo., Div. 2, 1970) 452 S.W.2d 65, in which petitioner's conviction for an attempt to escape from the Missouri Penitentiary in 1967 was affirmed.

Although those two recent Supreme Court of Missouri cases involve the same petitioner involved in this case, the preliminary hearing questions presented in each of those cases are presented in cases which are entirely separate and distinct from this case. Under familiar principles of exhaustion, petitioner must present any question concerning an alleged denial of counsel at prelimi-

8. As Judge Seiler appropriately pointed out in his dissenting opinion in 416 S.W.2d at 77–79, it is almost impossible for counsel to participate in a preliminary hearing and not become fully acquainted with the factual and legal questions presented in a particular case. In Pedicord v. Swenson, we stated: "Experience teaches that convictions based on pleas of guilty tendered immediately or shortly after hasty courthouse conferences between the defendant and his recently appointed counsel are a fertile source of postconviction proceedings. * * * The practice of forcing or permitting counsel, ex-

cept under exceptional circumstances, to enter anything other than a plea of not guilty on the day of his appointment is almost an invitation to the defendant to later question the effectiveness of the representation afforded by counsel who, under ordinary circumstances, would obviously lack time to investigate either the facts or the law in a particular case.

In the event the not unlikely postconviction motion is filed, uncompensated time of still other lawyers will be required in the state trial and appellate courts, and, still later, for the trial and appellate courts in the federal system."

nary hearing involved in his two escape cases to the State courts before attempting to invoke the habeas corpus jurisdiction of this Court.

## V.

Petitioner's most recent attempt to escape case, reported in 452 S.W.2d 65, shows that petitioner's four year sentence was imposed in that case under the Missouri Second Offender Act (V.A.M.S. Supp. § 556.280) and that the prior conviction relied upon by the State in that case was petitioner's 1965 Jasper County conviction involved in this case.[9] The use of what we have determined to be an invalid conviction in petitioner's attempt to escape case may at some future time call for application of principles articulated in Burgett v. Texas, 389 U.S. 109, 88 S.Ct. 258, 19 L.Ed.2d 319 (1967) and Losieau v. Sigler, (8th Cir., 1969) 406 F.2d 795, cert. denied 396 U.S. 988, 90 S.Ct. 475, 24 L.Ed.2d 452, 485 (1969), which recently applied those principles to the Nebraska Habitual Criminal Act. See also Williams v. Coiner, (4th Cir., 1968) 392 F.2d 210 (cited with approval by the Eighth Circuit in *Losieau*) and compare Gerberding v. State, (Sup.Ct. Mo., Div. 2, 1970) 448 S.W.2d 904 (in which the Supreme Court of Missouri distinguished the federal cases just cited).

Although it may eventually be determined that our decision in this case may have an impact upon the sentence affirmed in 452 S.W.2d 65, it is not proper for this Court to reach that question in this case. The vacation of petitioner's 1965 Jasper County conviction, the only conviction involved in this case, does not entitle petitioner to a release from custody, except for the purpose of a new trial, should the State elect to retry petitioner on the Jasper County offense.

Whether or not the State of Missouri elects to retry petitioner on the Jasper County charge is irrelevant to the question of whether petitioner's custody under either the escape conviction, affirmed in 442 S.W.2d 75, or under his attempt to escape conviction, affirmed in 452 S.W. 2d 65, may be lawful. Applicable principles of exhaustion command that petitioner present any and all questions involving the legality of his confinement under either or both of those sentences to the Missouri courts before attempting to invoke the habeas corpus jurisdiction of this Court in connection therewith.

Accordingly, and consistent with the command of Section 2243 of Title 28, United States Code, to dispose of this matter as law and justice require, and for the reasons above stated, it is

Ordered that petitioner is entitled to the relief prayed for in connection with his conviction and seven year sentence imposed on June 14, 1965 by the Circuit Court of Jasper County, Missouri; but that the writ shall not issue for a period of thirty (30) days in order to afford the State of Missouri, acting through its Attorney General, the opportunity to have petitioner's conviction set aside or declared to be invalid, to have counsel appointed, and to begin new trial proceedings. It is further

Ordered that if no such new trial proceedings are commenced within the thirty (30) day period, or within an extended period of time granted for good cause shown, the writ shall issue. It is further

Ordered that if such trial proceedings are begun within the thirty (30) day pe-

---

9. The Supreme Court of Missouri noted that petitioner's prison dossier (which apparently had been introduced in evidence) showed that, in addition to petitioner's 1965 Jasper County conviction involved in this case, petitioner had prior convictions in Arkansas and Texas (the Rule 27.26 transcripts mention two Texas convictions, Tr. 41) and at least one federal sentence served at Leaven-worth Penitentiary. Those circumstances prompted the Supreme Court to suggest that in future cases "with records such as Turley's * * * the state should not permit any question to arise as to the applicability of the Second Offender Act, thus forestalling further post-conviction proceedings." [452 S.W.2d at 71]. That advice, of course, can not be retroactively followed.

riod, or within any granted extension, this Court will delay the issuance of its writ until such time as the situation calls for further appropriate order. It is further

Ordered that the Attorney General keep this Court advised of all proceedings which may be taken consistent with our stay of the issuance of the writ.